Kenneth FERRELL *v.* COLUMBIA MUTUAL
CASUALTY INSURANCE COMPANY

90-221                                        816 S.W.2d 593

Supreme court of Arkansas
Opinion delivered September 30, 1991

534

*Arnold, Hamilton & Streetman*, by: *Thomas S. Streetman*, for appellant.

*Daggett, Van Dover & Donovan*, by: *Robert J. Donovan*, for appellee.

ROBERT H. DUDLEY, Justice. The basic issue in this case is whether the statute setting out the method for prospectively

cancelling an automobile insurance policy has abrogated an insurance company's common law right to rescind an automobile insurance policy *ab initio*. We hold that under some circumstances an insurance company still has the right to rescission *ab initio*. In so holding, we reverse the trial court.

Kenneth Ferrell's automobile insurance policy, which had been issued by Southern Farm Bureau Insurance Company, ended at midnight, January 31, 1988. Early the next morning, February 1, he went to Jarvis Insurance Agency in Crossett to purchase a new policy, which would provide bodily injury, property damage, and collision coverage on his three (3) personal cars and a 1988 Toyota owned by his daughter Christi. The agency apparently assumed that he owned the Toyota. Harold Jarvis, the agent, quoted a price for such a policy. Kenneth said he wanted the cars to be covered immediately, and a clerk took his application. The trial court found that he made numerous material misrepresentations in the application including: not acknowledging his moving traffic violations; not acknowledging his wife's moving traffic violations; not listing his son's moving traffic violations or accidents; and, most importantly to this case, not listing his daughter's moving traffic violations. The trial court found that his daughter, Christi, had no knowledge of the material misrepresentations and did not participate in making them. However, Christi testified that her father was her agent in the procurement of the policy:

> Q. Were you relying on your father to get insurance for you or your car?
>
> A. Yes, sir.
>
> Q. And was he authorized to make an application on your behalf to get that insurance?
>
> A. Yes, sir. He was paying for my insurance, so I didn't—
>
> Q. I understand.

Kenneth paid the premium, and the Jarvis Agency issued a preferred-risk binder on Columbia Mutual Insurance Company. Three (3) days later, on February 4, 1988, Christi did not see a stop sign in Monroe, Louisiana, ran through it, and was hit by

another car. The market value of her 1988 Toyota was diminished by $11,500.00. In addition, her car destroyed a nearby street sign for which the City asked $89.03 in damages. She immediately reported the accident to the Jarvis Agency.

In the meantime, Columbia Mutual was processing the binder through its normal channels. It had requested U.S. Data, a reporting company, to check the driving history of the listed drivers. U.S. Data furnished the history, probably on February 9. On February 10, an underwriter for Columbia Mutual rejected the binder because of Kenneth's and Christi's driving records. The records reflected that Kenneth had two speeding infractions; Christi had four speeding infractions and one accident within the last three years. Under its preferred plan, Columbia Mutual will not issue coverage if a driver has had a driving offense within three years. On February 18, 1988, Columbia Mutual refunded the premium to Kenneth and advised him it was rescinding the policy, *ab initio*, because of his fraud. At that time, the underwriter did not know about Christi's wreck.

On February 25, 1988, Columbia Mutual filed suit in chancery court against Kenneth and Christi. The suit sought rescission of the policy retroactive to the date of issue, February 1. The basis of the suit was the material misrepresentation in the policy application.

Kenneth and Christi answered and filed a counterclaim and an amended counterclaim. They alleged that they had suffered property damages of $11,500.00 less a deductible amount of $250.00, and that they had paid $89.03 to the City of Monroe, for a total of $11,339.03 plus interest. They also sought a 12% penalty, and a reasonable attorney's fee pursuant to Ark. Code Ann. § 23-79-208 (1987). Finally, they prayed for punitive damages in the amount of $250,000 because of Columbia Mutual's "bad faith" in the "cancellation" of the insurance policy.

Columbia Mutual filed an amended complaint in which it asked alternatively that if the policy were not retroactively rescinded and if Columbia Mutual were required to pay any losses under the binder, then it be given judgment over and against Kenneth for his fraudulent misrepresentation. This amounted to an alternate common law action of deceit. The

chancery court took jurisdiction and began to hear all of the causes of action; however, at the conclusion of all the evidence, the chancellor granted Columbia Mutual's motion to strike Kenneth's and Christi's counterclaim for punitive damages on the ground that equity lacks jurisdiction to award punitive damages.

On September 30, 1988, the chancellor granted a partial summary judgment in favor of Christi. He found that the "notice of cancellation" provisions of Ark. Code Ann. §§ 23-89-303 and 304 (1987) and the public policy of this State prohibited Columbia Mutual's rescission of coverage *ab initio*. Subsequently, the chancellor granted Christi judgment against Columbia Mutual for $11,339.03, a 12% penalty of $1,360.72, and an attorney's fee of $8,507.37. The Chancellor awarded Columbia Mutual a judgment over and against Kenneth for the same amount. Kenneth appeals and designates four (4) points for reversal. Columbia Mutual cross-appeals and designates two (2) points. Because the cross-appeal determines the complete outcome of the case, we discuss it first.

In this appeal, Columbia Mutual argues that the trial court erred in refusing to rescind the binder *ab initio*. It argues Ark. Code Ann. §§ 23-89-303 and 304 (1987), which provide that an insurer must give notice before cancelling a policy, do not apply to first-party property damage coverage. The argument is meritorious.

█ █ It is undisputed that at common law an insurance company could retroactively rescind coverage because of fraud or material misrepresentation. *Old Colony Life Ins. Co.* v. *Fetzer*, 176 Ark. 361, 3 S.W.2d 46 (1928). Rescission of a contract and cancellation of a contract are two distinct remedies, based on different grounds, 17 G.J. Couch, *Couch Cyclopedia of Insurance Law*, §§ 67:33, 67:54 (R.A. Anderson, ed., 2d rev. ed. 1983). Cancellation takes effect only prospectively, while rescission voids the contract *ab initio*. *Id*.

Many courts have interpreted "no fault" insurance legislation, *see* Ark. Code Ann. § 23-89-202 (1987), and compulsory motor vehicle acts, *see* Ark. Code Ann. §§ 27-22-101—104 (Supp. 1991), as expressing a public policy that one who suffers a loss as the result of an automobile accident shall have a source and

means of recovery. As a result, courts have held that when an innocent third party has suffered damages as a result of an insured's negligent operation of an insured vehicle, there is no right of retroactive rescission. These courts have held that the insurance company's right of retroactive rescission has been abrogated, and the only remedy for an insurance company is prospective cancellation in accordance with the terms of the statute. *See Teeter* v. *Allstate Ins. Co.,* 9 App. Div. 2d 176, 192 N.Y.S.2d 610 (1959), *aff'd* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961). There are additional reasons for holding that prospective cancellation statutes abrogate retroactive rescission of a policy of liability insurance. If an insurer could unilaterally rescind coverage, unscrupulous insurers could hold the threat over the head of third party claimants in an attempt to bargain down their claims; and immediately issued binders are a marketing gimmick, and insurers are not entitled to be protected from their own gimmicks because they could verify information before extending coverage. *See Metropolitan Property & Liability Ins. Co.* v. *Insurance Comm'r,* 535 A.2d 588 (Pa. 1987).

■ Regardless of the reasoning used, all courts that have considered the question as it applies to an innocent third-party claimant have held that the insurer cannot, on the ground of fraud or misrepresentation, retroactively avoid coverage under a compulsory insurance or financial responsibility law. *See Dunn* v. *Safeco Ins. Co.,* 14 Kan. App. 2d 732, 798 P.2d 955 (1990), for a listing of cases. In this case, however, we are not dealing with an innocent third-party claimant and make no holding on that issue. Instead, we are dealing with the insureds themselves, Kenneth Ferrell and his daughter Christi, and we are not dealing with a liability policy, but instead with collision coverage. Kenneth made the material misrepresentations for himself and as agent for his daughter. His misconduct is imputed to her.

■ There is no compulsory insurance statute which requires one to insure oneself against his own property loss. *See* Ark. Code Ann. § 27-22-104 (Supp. 1991). Thus, when a case involves only the insured and the insurer, and the loss involves the insured's property, there is no public policy reason to hold that the insurance company's common law right to rescission has been abrogated. *Dunn* v. *Safeco Ins. Co., supra; United Security Ins. Co.* v. *Comm'r of Insurance,* 133 Mich. App. 38, 348 N.W.2d 34

(1984). To hold otherwise would permit an insured to benefit from his fraudulent misrepresentations and leave the insurer without a remedy.

One case is contra, but it is based upon a statute that is markedly different from ours. In *Metropolitan Property & Liability Ins. Co. v. Insurance Comm'r*, 535 A.2d 588 (Pa. 1987), the court held that the statute providing for prospective cancellation abrogated the common law right of retroactive rescission between the insurer and the insured because the statute provided:

> Nothing in this Act shall apply . . .
>
> (3)   To any policy of automobile insurance which has been in effect less than sixty days, unless it is a renewal policy, except that no insurer shall decline to continue in force such a policy of automobile insurance on the basis of the grounds set forth in subsecton (a) *of section 3 hereof and except that if an insurer cancels a policy of automobile insurance in the first sixty days, the insurer shall supply the insured with a written statement of the reason for cancellation.*

*Id.* at 594.

In construing the italicized language the court wrote:

> the explicit language of the exception . . . clearly indicates the legislative intent to govern the termination of policies even during the sixty day period. Although that language prescribes only minimal procedures to be followed, it nevertheless clearly prescribes what an insurer *must* do.

*Id.* at 594.

On the other hand, our statute clearly provides a sixty day grace period during which the common law rules of rescission apply.

> This section shall not apply to any policy or coverage which has been in effect less than sixty (60) days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy.

Ark. Code Ann. § 23-89-303(b) (1987).

540

■ Accordingly, we hold that the Arkansas compulsory insurance statutes have not abrogated the insurer's common law right to rescission when: (1) only the insurer and the insured are involved in a non-compulsory provision of the policy, and (2) the policy has been in existence less than sixty (60) days, unless it is a renewal policy.

■ Courts may sever compulsory provisions of an insurance policy from non-compulsory provisions and permit rescission only as to non-compulsory provisions. *Dunn* v. *Safeco Ins. Co., supra.* In *Bankers & Shippers Ins. Co.* v. *McElveen,* the court wrote:

> The generally accepted rule is that "[w]here a compulsory automobile insurance policy contains additional clauses providing for noncompulsory coverage, a cancellation of the policy will be effective as to the latter clauses even if it does not comply with the statutory requirements as to the cancellation of the compulsory insurance." Annotation. Cancellation of Compulsory Automobile Insurance, 171 ALR 550, 554 (1947).

*Bankers & Shippers Ins. Co.,* 668 F.2d 185, 187 (3d Cir. 1981).

■ In the case at bar the chancellor held that the insurer's cause of action for rescission had been abrogated by the cited statutes. Such a ruling was in error since, under the facts of this case, rescission was still a viable cause of action. As has been previously set out, there were misrepresentations of material facts, the knowledge of which would have caused the insurer to decline to issue the policy, and therefore, rescission is the proper remedy. We so hold in this de novo review.

All of the damages prayed for and awarded were based upon the policy remaining in effect. That policy now has been ordered rescinded. It follows that the damages awarded on the counterclaim and an amended complaint cannot be allowed to stand. Accordingly, the award of damages is reversed. Since no damages are awarded, it is not necessary for us to determine whether the chancellor correctly assumed jurisdiction of all facets of this case.

Reversed on cross-appeal.