Sarah Sue JARBOE *v.* SHELTER INSURANCE
COMPANY d/b/a Shelter Mutual, Shelter General and
Shelter Life

91-67                                    819 S.W.2d 9

Supreme Court of Arkansas
Opinion delivered November 18, 1991

*The Law Offices of Christoper O'Hara Carter, P.A.*, by:
*Christopher Carter*, for appellant.

*Donald J. Adams*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Sarah Sue
Jarboe, appeals from a dismissal of her complaint against the
appellee, Shelter Insurance Company. The issue before the
circuit judge and on appeal concerns the obligation of Shelter
under Ark. Code Ann. § 17-30-210(c)(1) (1987) to notify the
State Plant Board that liability coverage on its insured, Lake
County Pest Control, had lapsed. Shelter argues that the statute

does not require notice when coverage stops due to a nonrenewal and further agrees that the duty in any event is not on the carrier to give notice. We disagree and reverse.

This is a case of first impression in Arkansas, and the facts are not in dispute. Shelter was the liability carrier for Lake County Pest Control, which sprayed Jarboe's house on September 5, 1986. Jarboe alleged faulty spraying and sued the company and its owner in 1987 for $100,000 for personal injury and damage to her property. Pest Control and its owner then took bankruptcy in 1989, and Jarboe filed this action against Shelter as the liability carrier for Pest Control, though the coverage on Pest Control had lapsed due to nonpayment. Shelter moved to dismiss the complaint, and the circuit judge granted the motion and stated that Shelter "was not required to notify the State Plant Board of non-renewal."

Jarboe's theory for relief is that, before Shelter could terminate or cancel its insurance on Pest Control, it had a duty under state law to notify the State Plant Board and Pest Control of the cancellation. Notification did not occur. Therefore, according to Jarboe, Shelter was still liable on the policy. Jarboe points specifically to relevant language in Ark. Code Ann. § 17-30-210 (1987):

> (b)  INSURANCE. In addition to the bond required in subsection (a)(1), before a license is issued or renewed, each applicant for a license in either the classification of termite and other structural pests or the classification of household pests and rodent control shall furnish the board a certificate of insurance written by an insurance company authorized to do business in this state, covering the public liability of the applicant for personal injuries for not less than twenty-five thousand dollars.($25,000) for any one (1) person, and fifty thousand dollars ($50,000) for any one (1) accident and not less than five thousand dollars ($5,000) property damage.

> (c)(1)  CANCELLATION. The bond and insurance shall not be cancelled or terminated until at least thirty (30) days after a notice of cancellation is received by the board.

(2) Upon failure of a licensee to maintain in full force and effect the bond and insurance required by this section, the license shall become void and shall not be reinstated until a satisfactory bond and insurance have been filed.

We first address the question of whether the statute, and specifically subparagraph (c)(1), applies to cases of lapse of coverage due to nonrenewal. The circuit judge hinged his decision on the fact that this was a case of nonrenewal and "there was no requirement placed upon Shelter to notify the State Board that there had not been a renewal of the insurance." In making his decision, the circuit judge appeared to be finding that the nonrenewal of a policy by the insured is not a cancellation by either the insured or the carrier.

Insurance companies, however, do cancel or terminate policies when a nonrenewal, lapse, or failure to pay premiums occurs. The Arkansas Court of Appeals has recognized cancellations due to nonpayment of premiums or lapse in two opinions. *See McDonald* v. *State Farm Mutual Insur. Co.*, 15 Ark. App. 346, 692 S.W.2d 274 (1985); *Blount* v. *McCurdy*, 267 Ark. 989, 593 S.W.2d 468 (Ark. App. 1980). Along the same lines, a distinguished treatise on insurance law treats "cancellation" and "termination" as synonymous terms and lists both cancellation for nonpayment of premiums and termination due to nonrenewal upon expiration of the coverage as circumstances leading to termination of coverage. *Keaton and Widiss, Insurance Law* § 5.11(a), p. 601 (1988). Thus, to find that a nonrenewal by an insured is not a cancellation by the carrier ignores what follows after nonrenewal. When a policy is not renewed, for whatever the reason, it is necessarily cancelled or terminated by the carrier.

We turn next to consider who has the burden to notify the State Plant Board of cancellation under Ark. Code Ann. § 17-30-210(c)(1). The section is silent on this point, and we refer to context and common sense for direction. *See Hutton* v. *Arkansas Department of Human Services*, 303 Ark. 512, 798 S.W.2d 418 (1990). Shelter argues that it is impractical to require it to notify the State Plant Board concerning all companies it is not insuring. But the issue before us is somewhat different. We are concerned only with those businesses where Shelter has cancelled coverage

for some reason. The number of such notices could not be that great.

Shelter further argues that it is the duty of the licensee to present a certificate of insurance each year to the State Plant Board, and there is, therefore, no responsibility on the part of Shelter to give notice that coverage has stopped. But that argument flies in the face of the clear language of the statute requiring notice of cancellation or termination to be given.

The purpose of the notification requirement is to assure that qualified licensees with insurance protection are providing pest control services so that the public will be protected. We recently noted in a vehicular collision case involving a different cancellation statute that when an innocent third party is damaged due to a negligent insured and when cancellation of the insured's insurance affects that third party, the carrier can only cancel the policy prospectively. *See Ferrell* v. *Columbia Mut. Cas. Insur. Co.*, 306 Ark. 533, 816 S.W.2d 593 (1991). The case before us is not a collision case but the same public policy protecting innocent third parties is applicable. Here, Shelter cancelled the policy without notice to the Plant Board and hence failed to give notice to the public, and Jarboe has been adversely affected as a result.

Moreover, when a licensee fails to qualify for some reason such as for lapsed insurance coverage, it is unrealistic to interpret the statute to require the licensee to give notice that it no longer qualifies to do business. The danger with this interpretation is that businesses with lapsed polices will not give notice, and the public, as a result, will go unprotected. It is more reasonable to place the notice burden on the carrier since it is clearly in the carrier's best interest to give notice. Otherwise, the carrier runs the risk of continuing to be liable under the policy. There is also the consideration that the carrier will know exactly when the failure to renew occurs and can promptly give notice to protect itself, whereas an insured may not be immediately aware of the lapse.

We are mindful that the Pest Control Services Act requires notice of a change of address or a change in the agents or operators to be made by the insured licensee. *See* Ark. Code Ann. § 17-30-212(b) (1987). Yet that is markedly different from this situation where the Code is silent and the incentive lies with the

carrier to give the notice. We hold that the General Assembly intended to require that the carrier give notice of cancellation, and until that is done, the policy with regard to third policies remains in full force and effect.

Reversed and remanded.

HOLT, C.J., NEWBERN and GLAZE, JJ., dissent.

DAVID NEWBERN, Justice. The statutory provision at issue in this case is, in relevant part, as follows:

17-30-210. Bond and insurance requirements.

(a)(1) Bond. Before a license is issued or renewed, the board shall be furnished an acceptable surety bond by each applicant for a licensee . . . .

\* \* \*

(b) Insurance. In addition to the bond required in subsection (a)(1), before a license is issued or renewed, each applicant for a license . . . shall furnish the board a certificate of insurance written by an insurance company authorized to do business in this state . . . .

(c)(1) Cancellation. The bond and insurance shall not be cancelled or terminated until at least thirty (30) days after notice of cancellation is received by the board.

The statute clearly places no obligation on anyone other than the applicant for a license to provide information to the Board.

Insurance companies have voluntarily notified the Plant Board 30 days prior to taking affirmative action to cancel the policies of licensees, but they have done nothing when the insurance has simply lapsed.

The statute provides no guidance as to who is to provide notice of the cessation of coverage, however denominated. Subsection (c)(2) provides:

Upon failure of a licensee to maintain in full force and effect the bond and insurance required by this section, the license shall become void and shall not be reinstated until a satisfactory bond and insurance have been filed.

As Ms. Jarboe correctly asserts, the basic rule of statutory construction, to which all other interpretive guides must yield, is that we give effect to the intent of the General Assembly. *Graham v. Forrest City Housing Auth.*, 304 Ark. 632, 803 S.W.2d 923 (1991); *Holt* v. *City of Maumelle*, 302 Ark. 51, 786 S.W.2d 581 (1990); *In Re Adoption of Perkins/Pollnow*, 300 Ark. 390, 779 S.W.2d 531 (1989). When the wording of a statute is clear and unambiguous, the statute will be given its plain meaning. *Cash* v. *Arkansas Comm'n on Pollution Control & Ecology*, 300 Ark. 317, 778 S.W.2d 606 (1989). When a statute is clear and unambigious, we do not search for legislative intent. The intention of the General Assembly must be gathered from the plain meaning of the language used. *Hinchey* v. *Thomasson*, 292 Ark. 1, 727 S.W.2d 836 (1987).

Here, there is clear expression of intent to place some reporting obligations on licensees. The statute contains no language placing a reporting duty of any kind upon any other person or entity.

Subsection (c)(2), contains no provision for notification of the Plant Board of a licensee's failure to maintain insurance. It provides only that upon the failure of the licensee to maintain insurance the license shall become void. The Court's conclusion that by subsection (c)(1) the General Assembly intended to place the obligation on the insurer is plainly out of step with the statutory scheme.

The Court's opinion will require each insurer to provide information to the Plant Board about each entity to which it may once, even in the distant past, have provided insurance. To require the insurer to notify the Plant Board of a cancellation or termination of a policy on an entity to which it had extended coverage at an earlier time without placing the same obligation with respect to current coverage affords no protection to the public and seems illogical if not absurd.

Ms. Jarboe argues that the intent of the licensure procedure is to protect the public and insure that proper standards are met. She challenges the logic of a scheme which then leaves reporting a violation of the rules in the hands of the violator. If the statutory scheme could be improved, that is a matter to be addressed by the General Assembly rather than this Court. She cites no support for

her intent assertion, and none is found in the statute.

The argument that the practice of insurers to notify the Plant Board of cancellations effected by the insurers should be considered in determining the meaning of the statute would be attractive but for Ark. Code Ann. § 17-30-212 (1987):

Transferability — Change in licensee status.

(a) No license or registration shall be transferable.

(b) When there is a change in the status of a licensee, such as change of address, operator in charge, agents or solicitors, the licensee shall immediately notify the board of the changes.

The Court's opinion concludes that the duty to notify the Board of a change in status is limited to those specifically stated, a change of address, operator in charge, agents or solicitors, and that this duty on the licensee, is "markely different from this situation where the Code is silent and the incentive lies with the carrier to give the notice." The insurer would have an incentive to notify the Board of the termination and such a requirement would be upheld if it were required by the statute, but it is not. The provision that the insurance "shall not be cancelled or terminated until at least thirty days after a notice of cancellation is received by the board," does not specifically place a duty on either party. It appears between two other subsections, (b) which imposes a duty on the licensee to furnish a certificate of insurance, and (c)(2) imposing a sanction on the licensee for failure to maintain the insurance in effect, that is, voiding the license.

Judicial restraint requires that we not rewrite a statute. The penalty being assessed upon the insurer by this Court for failure to comply with a nonexistent requirement is being manufactured from whole cloth. There is no provision forcing the insurance company to continue coverage, and we should not legislate such a penalty.

I respectfully dissent.

HOLT, C.J., and GLAZE, J., join in this dissent.