**Johnny L. BAKKER, D.D.S., Plaintiff,**

v.

**CONTINENTAL CASUALTY INSURANCE COMPANY, Defendant.**

**Civil No. 96–5029.**

United States District Court, Western District of Arkansas, Fayetteville Division.

April 1, 1996.

Thomas Allan Mars, Everett, Shemin, Mars & Stills, Fayetteville, AR, for Plaintiff.

Walker D. Garrett, Bassett Law Firm, Fayetteville, AR, for Defendant.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff is a dentist who seeks to renew his professional malpractice insurance upon the expiration of the current policy. His insurer, Continental Casualty Insurance Company, has notified plaintiff that it will not renew his policy due to "claims" on the prior policy. Plaintiff claims an action for breach of contract and for bad faith breach of contract.

Defendant has filed a motion to dismiss, or in the alternative for summary judgment, on the grounds that it was acting within its inherent right not to contract and that there are no provisions in the policy limiting that right, so long as proper notice is given, as it was.

The only papers necessary to decide this issue are plaintiff's complaint and the insurance policy itself. Nevertheless, both parties agree that the best course of action is for the court to decide this motion as one for summary judgment, and they have included all the papers they wish the court to consider.

### I. POLICY LANGUAGE

The original insurance policy contained the following provisions governing non-renewal and cancellation. These provisions essentially gave defendant an absolute right to non-renew a policy but placed conditions on cancellation.

**XV. Non–Renewal**

We can non-renew this policy by giving written notice to [you] ... at least 30 days before the expiration date.

## XVI. Cancellation

This policy can be cancelled by either [you] or us [under the conditions specified].

These original policy provisions were· superseded by an endorsement entitled "STATE PROVISIONS—ARKANSAS MEDICAL PROFESSIONAL· LIABILI-TY,"[1] the first sentence of which states that:

Any cancellation or non-renewal provisions contained in the policy to which this endorsement is attached are deleted and replaced with the following ...

The following endorsement is then composed entirely of one section entitled "cancellation,"[2] which provides as follows:

F. If this policy has been in effect for more than 60 days, or is a renewal, we shall not cancel this policy except for one or more of the following conditions....

In essence, the endorsement provides that the policy cannot be "cancelled" except under certain conditions in cases where the policy (a) has been in effect for more than sixty days, or (b) has been in effect for less than 60 days but is a renewal policy.

The endorsement does not place any limits on non-renewal. The reason the policy treats cancellation and non-renewal differently is clear: placing limits· on the insurer's right to cancel merely limits its ability to avoid performance of a contract to which it is a willing party; but placing limits on the insurer's right to non-renew would limit the insurer's right to not enter a contract in the first place, potentially binding the insurer to its insured in perpetuity.

Despite the clear language and purpose of the policy, plaintiff contends that the condi-

tions that the endorsement places on cancellation must also apply to non-renewal. Before considering this argument, the court will discuss the appropriate rules of insurance contract construction. ·

## II. RULES OF CONSTRUCTION

In construing the policy, traditional rules of insurance policy ·construction apply. *Ritter v. United· States Fid. &·Guar. Co.*, 573 F.2d 539 (8th Cir.1978). A policy is to be interpreted and construed like any other contract according to general contract principles to determine the mutual intent of the parties. *Enterprise Tools, Inc. v. Export–Import Bank of U.S.*, 799 F.2d 437 (8th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1569, 94 L.Ed.2d 761 (1987). However, due to the reality that insurance contracts are contracts of adhesion, the courts have developed some special rules of construction, the most important of which is the rule that when a policy provision is ambiguous, the court must resolve that ambiguity in favor of the insured. *Deal v. Farm Bureau Mut. Ins. Co. of Ark.*, 48 Ark.App. 48, 889 S.W.2d 774 (1994).

The determination of ambiguity rests with the court. *Deal, supra.* However, this does not provide the court with license to rewrite the policy, or to· import an ambiguity that· does not exist, or to force an unnatural or perverted meaning from plain words under the guise of construction. *Looney v. Allstate Ins. Co*, 392 F.2d 401 (8th Cir.1968). Ambiguity exists only if the insurance policy provision is susceptible to more than one reasonable interpretation. *Keller v. Safeco Ins. Co. of Am.*, 317 Ark.. 308, 877 S.W.2d 90 (1994). Also, the terms of an insurance policy are to be interpreted in their "plain, ordinary and popular sense," rather than their legal or technical meaning. *Southern Farm Bureau*

---

**1.** This endorsement seems to have been engendered by relevant provisions of the "Trade Practices Act," Acts 1959, No. 148, § 208, providing that certain acts of insurance carriers in Arkansas shall be deemed to constitute "unfair methods of competition and unfair or deceptive acts or practices." The provisions codified as Ark. Code Ann. § 23–66–206(11)(A) having to do with policy cancellations closely parallels the language of this endorsement.

**2.** Plaintiff erroneously believes that the endorsement consists of two sections, "Cancellation" and "Increased Premiums." Plaintiff made this error by looking at the wrong endorsement page. · However, as the court has had recent opportunity to experience in this very case, to err is human.

*Cas. Ins. Co. v. Williams,* 260 Ark. 659, 662, 543 S.W.2d 467 (1976).

## III. DISCUSSION

As the court made clear in its earlier discussion of the policy provisions, the provisions in question are clear and unambiguous. The policy clearly and expressly makes a distinction between cancellation provisions and renewal provisions. First, the body of the original policy has two separate sections, one entitled "cancellation" and one entitled "non-renewal." Second, the introductory sentence of the endorsement states that it applies to "[a]ny cancellation or non-renewal provisions contained in the policy." The following endorsement is then composed entirely of one section entitled "cancellation," and the endorsement does not place any limits on non-renewal. The reason the policy treats cancellation and non-renewal differently is clear: cancellation merely involves performance of an existing contract; non-renewal involves consent to a new contract.

As already indicated, the law of Arkansas is that an insurance policy issued by an insurance company to its insured is nothing more than a contract between two presumably willing parties, and should be construed as such. In this case, when the plaintiff applied for insurance, and when the insurance carrier agreed to provide a policy, the contract that the parties entered into was to last for a term of one year. When that year was up, the contract was over and done with. It was finished. At that point, the parties could agree to enter into a new contract for an additional period, but neither of them was required to, and nothing contained in Arkansas law or the insurance policy changed that.

The court agrees that the endorsement deleted the initial provisions of the insurance policy having to do with non-renewal, but, as a matter of contract law, that does not mean that the insurance company agreed to keep the plaintiff as its insured in perpetuity, or at least until the cause provisions of the cancellation provisions occurred. The cancellation provisions applied to cancellation of existing contracts between the parties, and did not in any way affect the parties right to either contract or not contract when the old contract expired.

The law in almost every jurisdiction is that, absent a provision in the policy providing for renewals or legislative enactments governing such, the parties reserve the right to either agree or not agree to be bound in the future. *See e.g. Gahres v. Phico Ins. Co.,* 672 F.Supp. 249 (E.D.Va.1987) (applying the law of Virginia in dicta, no duty to renew medical malpractice insurance); *Egnatz v. Medical Protective Company,* 581 N.E.2d 438 (Ind.Ct.App.1991) (collecting cases); *Armstrong v. Safeco Ins. Co.,* 765 P.2d 276 (Wash.1988); *Gautreau v. Southern Farm Bur. Cas. Ins. Co.,* 429 So.2d 866, 869 (La. 1983) (no duty to renew property damage insurance); *Coira v. Florida Med. Ass'n,* 429 So.2d 23 (Fla.Dist.Ct.App.1983) (no duty to renew medical malpractice insurance).

Nevertheless, plaintiff argues that the limitations on cancellation should also apply to termination by non-renewal, because plaintiff contends that the Supreme Court case of *Jarboe v. Shelter Ins. Co.,* 307 Ark. 287, 819 S.W.2d 9 (1991) supposedly held that the terms cancellation and non-renewal are synonymous.

In *Jarboe, supra,* the Supreme Court of Arkansas considered a statutory scheme regulating pest control companies and their use of hazardous materials. The statute in question required pest control companies to post a bond and file a certificate of insurance with the State Plant Board prior to obtaining a license. Also, the statute stated that "[t]he bond and insurance shall not be cancelled or terminated until at least thirty (30) days after a notice of cancellation is received by the board." Ark.Code Ann. § 17–37–210(c)(1). The purpose of the legislation was clearly to protect consumers from uninsured pest control companies.

In *Jarboe,* Shelter Insurance was the liability carrier for Lake County Pest Control ("Pest Control"), which sprayed plaintiff's house in 1986. In 1987, plaintiff sued Pest Control for faulty spraying, but Pest Control and its owner took bankruptcy in 1989, so plaintiff sued Shelter Insurance directly "though the coverage on Pest Control had

lapsed due to nonpayment." *Id.*, 307 Ark. at 288, 819 S.W.2d 9.

Plaintiff contended that Shelter Insurance was still liable on the policy despite the lapse, because Shelter Insurance had failed to notify the State Plant Board of the lapse of coverage as required by Ark.Code Ann. § 17–37–210(c)(1). In response, Shelter Insurance argued that: (a) the duty to notify the State Plant Board of "cancellation or termination" only applied to pest control companies and not their insurers; and (b) a lapse of coverage due to nonpayment was not a "cancellation or termination" requiring notice.

The circuit court granted Shelter Insurance's motion to dismiss on the ground that Shelter Insurance "was not required to notify the State Board of non-renewal." *Id.*

The Supreme Court reversed the circuit court. First, the Court held that the duty to notify of "cancellation or termination" applied equally to pest control companies and their insurer. More relevant to our case, the Court held that a lapse in coverage due to nonpayment of premiums was a "cancellation or termination" of coverage requiring notice to the State Plant Board. The Court explained this result as follows.

> Insurance companies … cancel or terminate policies when a nonrenewal, lapse, or failure to pay premiums occurs. The Arkansas Court of Appeals has recognized cancellations due to nonpayment of premiums or lapse in two opinions. *See McDonald v. State Farm Mutual Insur. Co.*, 15 Ark.App. 346, 692 S.W.2d 274 (1985); *Blount v. McCurdy*, 267 Ark. 989, 593 S.W.2d 468 (Ark.App.1980). Along the same lines, a distinguished treatise on insurance law treats "cancellation" and "termination" as synonymous terms and lists both cancellation for nonpayment of premiums and termination due to nonrenewal upon expiration of the coverage as circumstances leading to termination of coverage. *Keaton and Widiss, Insurance Law* § 5.11(a), p. 601 (1988). Thus, to find that a nonrenewal by an insured is not a cancellation by the carrier ignores what follows after nonrenewal. When a policy is not renewed, for whatever the reason, it is necessarily cancelled or terminated by the carrier.

*Id.*, 307 Ark. at 289, 819 S.W.2d 9.

According to plaintiff, the quoted language renders the terms cancellation, termination and non-renewal forever synonymous under Arkansas law, or at least ambiguous. From this premise, plaintiff reasons that since his policy endorsement prohibits "cancellation" of existing policies except for certain specified reasons, those same limitations must apply to non-renewal of an expired policy.

We reject such a broad reading of *Jarboe*, as we believe the Supreme Court of Arkansas would do if presented with the same issue.

First, in *Jarboe*, the Supreme Court undoubtedly used some loose language, but the Court's intent was clear. The Supreme Court simply wanted to make sure that the phrase "cancellation or termination" was interpreted to achieve its statutory purpose—to protect pest control consumers from uninsured pest control companies. Given this purpose, it did not matter whether a pest control company was uninsured because coverage had lapsed due to nonpayment of premiums, or because the insurer had refused to renew an expired insurance policy. Consumers would be unprotected in either instance. Thus, the Court did not carefully distinguish between these two situations, as such distinctions were simply not relevant to the goal of protecting consumers from uninsured pest control companies. In essence, the Court held that insurance companies must notify the State Plant Board of any event that interrupts coverage, no matter what the cause. That is all the case said. These considerations do not apply to this case.

Second, in *Jarboe*, the Court was interpreting the phrase "cancellation or termination," which is undoubtedly broader than the word "cancellation" standing alone, which is being interpreted in this case, and without any broad statutory purpose to require a broad construction.

Finally, we do not believe that *Jarboe* can be read to intend the sweeping revision of insurance law advanced by plaintiff. There are numerous situations where the distinc-

tion between cancellation and non-renewal is both useful and a simple matter of common sense, despite *Jarboe's* confusing dicta to the contrary. For instance, there are Arkansas statutes that separate the two terms. *Cf. Ark.Code Ann.* § 23–89–304 (Time for Notice of Cancellation) *with Ark.Code Ann.* § 23–89–305 (Notice of Non-renewal). Also, in this very case, for reasons that are obvious, the body of the original policy makes an express distinction between cancellation provisions and non-renewal provisions, and the endorsement continues this distinction. *Jarboe* is limited to its own peculiar facts and cannot be read to prevent such distinctions.

## IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss will be granted. A separate order will be entered concurrently with this opinion.