# FARMERS HOME MUTUAL FIRE INSURANCE COMPANY *v.* BANK OF POCAHONTAS

CA 01-712 101 S.W.3d 867

Court of Appeals of Arkansas
Division III
Opinion delivered April 2, 2003

330

*Stidham Law Firm, P.A.*, by: *Daniel T. Stidham*, for appellant.

*John C. Throesch*, for appellee.

OLLY NEAL, Judge. In an unpublished opinion dated February 13, 2002, *Farmers Home Mutual Fire Insurance Co. v. Bank of Pocahontas*, CA01-712, appellant, Farmers Home Mutual Fire Insurance Company (Farmers) was afforded the opportunity to supplement its abstract in conformance with Arkansas Supreme Court Rule 4-2(a)(6). As the trial court's findings were not clearly erroneous, we now affirm.

The facts are as follows. Donna Hawkins borrowed money from appellee, Bank of Pocahontas (Bank), for the purchase of a home. The Bank approved the loan and issued a standard real estate mortgage that required an insurance policy naming itself as loss payee. Farmers issued the policy to Hawkins in 1996. The policy contained a standard mortgage clause naming the Bank as loss payee.

Upon renewal of the policy in 1998, Hawkins's premium check was returned marked "insufficient funds." On May 26, 1998, Farmers mailed Hawkins and the Bank a letter stating that the check would be redeposited on May 31, 1998. The check again failed to clear. On June 9, 1998, Farmers mailed Hawkins and the Bank another letter indicating that unless payment was received on or before June 18, 1998, the coverage would be terminated. Subsequently, Farmers canceled the policy when it did not receive payment. Farmers mailed a notice of the cancellation to Hawkins and the Bank on June 23, 1998.

On September 27, 1998, a fire destroyed Hawkins's home, and Farmers refused to pay the claim, contending that the policy had effectively been canceled. The Bank filed suit, alleging that it did not get notice of the cancellation, or if the notice was adequate, it was void under the terms of the policy. Alternatively, it argued that the policy had been reinstated by a document it received from the local insurance agent who had purchased the agency where the Hawkins policy originated.

The trial court awarded the Bank $23,500, plus 12% penalty and $4,000 in attorney's fees. The court determined that the Bank had been properly notified of the cancellation, but found that the terms of the policy required Farmers to make a "demand"on the Bank. The court reasoned that since no demand was made, the policy was still in effect at the time of the loss. The court further found that the policy was reinstated by the document Farmers sent to its new agent. It is from this judgment that appeal is taken.

On appeal, Farmers contends that (1) the trial court erred in holding that the mortgage clause of the insurance policy requires the insurance company to make demand upon the Bank to pay the insured's premiums before cancellation of the policy can be effected for nonpayment of premiums because (a) the ordinary and plain meaning of the policy does not require that the insurance company make demand upon the mortgagee to pay the premium on behalf of the insured and (b) the language of the policy regarding the issue of demand is not ambiguous, therefore requiring that the policy language be construed against the insurer; (2) if demand on the mortgagee is required under the terms of the policy, then the three letters mailed out to the mortgagee regarding nonpayment of the premium are sufficient to constitute demand that the premium be paid by the mortgagee; and (3) the trial court erred in finding that an internal memorandum issued to its agent reinstated the policy after it was canceled because (a) absent proof that all of the conditions necessary for reinstatement of the policy had either been met, or said conditions waived by the insurer, there could be no reinstatement of the policy and (b) the mortgagee, who never received the "internal memorandum" until after the loss, could not have reasonably relied upon the document as evidence that the policy had been reinstated, or somehow afforded it coverage for the loss.

■ In bench trials, the standard of review on appeal is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). The appellate court views the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee; disputed facts and determinations of the credibility of witnesses are within the province of the fact finder. *Id.*

*I. Whether the policy language is ambiguous and required a demand*

Farmers contends that the trial court erred because the ordinary and plain meaning of the policy language did not require it to make a demand upon the Bank to pay Hawkins's premium before the cancellation of the policy could be effected for nonpayment of the premiums. In determining that the policy required that Farmers make demand upon the Bank for payment of the premium, the trial court found that the language of the policy was "at the least" ambiguous, and thus must have been resolved in favor of the insured. In its order, the court stated that it could not "strictly apply the terms of the policy with respect to the mailing of the notice as being sufficient evidence of notice and ignore the requirement that the policy places on [Farmers] to make demand for payment of the premium from [the Bank] when [Donna Hawkins] fails to pay same." We agree with the trial court.

 Nonrenewal, lapse, or failure by the insured to pay an insurance premium results in cancellation of the policy by the carrier. *Jabore v. Shelters Ins. Co.*, 307 Ark. 287, 819 S.W.2d 9 (1991). In reviewing an insurance policy, the appellate court submits to the principle that when the terms of the policy are clear, the language in the policy controls. *Columbia Mut. v. Home Mut. Fire*, 74 Ark. App. 166, 47 S.W.3d 909 (2001). The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). If a policy provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction; if, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, the policy will be construed liberally in favor of the insured and strictly against the insurer. *Id.* Whether the language of a policy is ambiguous is a question of law to be resolved by the court. *Id.*

 There are two major categories of mortgagee clauses: (1) loss–payable and (2) standard clauses. *Nationwide Mut. Ins. Co. v. Hunt & First Citizens Bank*, 327 S.C. 89, 488 S.E.2d 339 (1997). In *Nationwide*, the South Carolina Supreme Court provided that:

> A loss payable, or open mortgage, clause typically declares that the loss, if any, is payable to a mortgagee as its interest might

appear. A standard mortgage clause, also known as a union or New York mortgage clause, uses language similar to the loss-payable, but further stipulates that, as to the interest of the mortgagee, the insurance shall not be invalidated by certain specified acts of the insured, which continue as grounds of forfeiture against him. The following is an example of a standard clause:

> [T]his insurance, as to the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or the owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership [of] the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the same.

*Id.* at 92, 488 S.E.2d at 341. (Citations omitted.)

It is generally held that standard mortgage clauses create independent contracts for the insurance of the mortgagee's interest. *See Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 318, 486 N.W.2d 600 (1992); *Equality Savings & Loan Ass'n v. Missouri Property Ins. Placement Facility*, 537 S.W.2d 440 (Mo. Ct. App. 1976); *Prudential Ins. Co v. Franklin Fire Ins. Co.*, 180 S.C. 250, 185 S.E. 537 (1936). In Arkansas, we have likewise held that generally, a standard mortgage clause serves as a separate contract between the mortgagee and the insurer, as if the mortgagee had independently applied for insurance. *Columbia Mut. v. Home Mut. Fire, supra* (citing *Fireman's Fund Ins. Co. v. Rogers*, 18 Ark. App. 142, 712 S.W.2d 311 (1986)). Thus, the rights of a named mortgagee in an insurance policy are not affected by any act of the insured, including improper and negligent acts. *Columbia Mut. v. Home Mut. Fire, supra* (citing *Hatley v. Payne*, 25 Ark. App. 8, 751 S.W.2d 20 (1988)).

The policy language in question provides that:

> Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the Declarations page of this policy, as interests may appear, under all present or future mortgages upon said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or any other proceedings or

notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, *on demand*, pay the same [emphasis added]. Provided, also, that the mortgagee (or trustee) shall notify **us** [emphasis in original] of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void.

■ This is a standard mortgage clause, which under Arkansas law, serves as a separate contract between the Bank and Farmers, as if the Bank had independently applied for insurance. We agree with the trial court's finding that the policy language, when construed in its plain, ordinary, popular sense, is at best ambiguous, thereby requiring that the policy be liberally construed in favor of the Bank and strictly against Farmers. Viewing the evidence in a light most favorable to the Bank and resolving all inferences in its favor, we cannot say that the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. Therefore, we affirm on this point.

## II. Whether the three letters mailed to Hawkins and Bank constituted a "demand"

In the alternative, Farmers argues that if this court finds that demand on the mortgagee was required under the terms of the policy, then the three letters it mailed to the Bank regarding Hawkins's nonpayment of the premium were sufficient to constitute a demand that it pay the premium. Appellant's argument is unpersuasive.

■ A "demand" is "a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting." *Babbit v. Chicago & Alston Ry. Co.*, 149 Mo. App. 439, 130 S.W. 364 (1910). The word "demand" need not be used in making such a legal request, but it is sufficient if any words are used which are understood by both parties to be a demand. *Id.* The proof of a demand may be shown by circumstantial evidence, or may be inferred from the actions and declarations of the parties as proven by direct evidence. *Id.*

■ This is not a case wherein there was no duty to inform because of a lack of contractual relationship. *See Columbia Mut. v. Home Mut. Fire, supra.* There existed a separate contract between Farmers and the Bank. An insurer's right to cancel a policy containing a standard mortgage clause on the mortgagee's failure, on demand, to pay premiums can be exercised only after strict compliance by the insurer with the terms of the agreement between the insurer and the mortgagee. *See American Mercury Ins. Co. v. Inland-Western Fin. Co.*, 6 Ariz. App. 409, 433 P.2d 60 (1967). In *American Mercury Insurance Co. v. Inland-Western Finance Co.*, the appellee, named as the mortgagee in a policy covering an aircraft, was granted summary judgment against the appellant. Appellant appealed, contending that the copy of the notice of possible future cancellation it sent to the appellee was a sufficient demand for payment and notice of cancellation under the terms of the breach of warranty endorsement. The Arizona Court of Appeals disagreed, holding that:

> A separate contract of insurance was created between the appellant and the appellee and the terms of the contract had to be strictly complied with. The notice of cancellation mailed out by appellant did not meet the requirement of strict compliance. The notice did not demand payment of the premium by the appellee. It was directed to Mr. Widmer [the insured] with a notation that a copy was being sent to appellee and it merely stated that the policy would be cancelled at a future date if the premium was not paid.

*Id.* at 411, 433 P.2d at 62.

■ Likewise in the instant case, the three letters Farmers mailed to Hawkins with a notation that a copy was being sent to the Bank did not meet the requirement of strict compliance. Although the cancellation language in the policy provided that proof of mailing alone would constitute sufficient proof of notice, we cannot, under *this* policy, construe this language to be the same as a demand by Farmers to the Bank. Therefore, we affirm.

Because we affirm for the foregoing reasons, we need not reach appellant's remaining argument.

Affirmed.

GLADWIN and BAKER, JJ., agree.