**FARMERS INSURANCE EXCHANGE,**
**Appellant,**

v.

**Joe ROSE, Jr., and Veronica Rose,**
**his wife, Appellees.**

**No. 22342.**

United States Court of Appeals
Ninth Circuit.

May 7, 1969.

Rehearing Denied June 20, 1969.

John J. O'Connor III, (argued), of Fennemore, Craig, Von Ammon, McClennen & Udall, Phoenix, Ariz., for appellant.

James H. Green, Jr. (argued), Phoenix, Ariz., for appellees.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

In May, 1964, Farmers Insurance Exchange (company) brought this diversity suit in the United States District Court for the District of Arizona. The company sought a judgment declaring, among other things, that: (1) a $50,-000–$100,000 automobile liability insurance policy it issued to David R. Vassar in January, 1964, is void, and (2) the company is not legally obligated thereunder to pay any portion of any judgment for damages rendered against Vassar, arising out of a March, 1964, automobile accident. Vassar, Joe Rose, Jr. and Veronica Rose, his wife, both of whom were injured in the accident, and others, were named defendants.

The company maintained that it was entitled to such relief because in applying for his policy, Vassar made certain statements and representations which were fraudulent and were material to the acceptance of the risk by the company. The assertedly fraudulent statements and representations related to Vassar's past driving and insurance record.

The Roses moved for summary judgment in their favor, arguing that the company was liable as a matter of law. For the purposes of the motion it was necessary for them to assume that Vassar had made the fraudulent statements as alleged. Otherwise, genuine issues of material fact would have been presented, precluding disposition of the case by summary judgment. See Rule 56(c), Federal Rules of Civil Procedure.

In support of their motion for summary judgment the Roses contended that under Arizona statutory and decisional law, once an accident has occurred, the liability of the insurer becomes absolute to the full extent of the policy limits, regardless of a defense of fraud in procurement of the policy. The district court agreed with this interpretation of Arizona law, and granted a summary judgment for defendants. This appeal followed.

Prior to the accident in March, 1964, the question of whether Vassar's allegedly fraudulent statements in applying for the policy constituted a policy defense was of interest only to Vassar and the company. As long as only the interests of these two were involved, the company could have cancelled the policy for fraud. Arizona statutes make fraudulent misrepresentation a policy defense, and allow prospective cancellation of insurance. See A.R.S. § 20–1109 and § 28–1171, respectively.

As soon as the accident occurred, however, the question of whether Vassar's allegedly fraudulent statements constituted a policy defense was also of interest to the Roses, who were injured in that accident. Therefore, evaluation of the company's fraud defense requires consideration of the possible application of the Financial Responsibility Act of Arizona, A.R.S. § 28–1161 et seq., and the related public policy of Arizona. This being a diversity action we are bound by the decisions of the Arizona courts concerning these matters. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

This appeal accordingly presents two basic questions: (1) Under Arizona law, did the company's liability to Vassar under the policy become absolute as to the automobile accident of March, 1964, notwithstanding the company's subsequent discovery of fraud by Vassar in applying for the policy? (2) If so, is the company's liability limited to $10,-000 for injuries to one person and $20,-000 for injuries sustained in one accident, (these amounts being specified in A.R.S. § 28–1170, subsec. B, par. 2(a) and (b), provisions of the Arizona Financial Responsibility Act), or does the company's liability extend to the policy limits of $50,000 for injuries to one person, and $100,000 for injuries sustained in one accident?

Turning to the first question, we start with the established principle that all automobile liability contracts in Arizona, whether or not "certified" under the Arizona Financial Responsibility Act, are controlled by A.R.S. § 28–1170 of that act, regardless of contract provisions to the contrary. Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98; Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145.[1]

In Jenkins v. Mayflower Insurance Exchange, the Arizona Supreme Court held that the omnibus clause of the Arizona Financial Responsibility Act, A.R.S. § 28–1170 subsec. B, par. 2, precluded application of a restrictive policy provision denying coverage while the vehicle was driven by a member of the armed forces. The Arizona court refused to recognize the distinction, established by the Financial Responsibility Act, between "certified" and "noncertified" policies, and, in effect, read the omnibus clause into every automobile liability contract in Arizona.

In Sandoval v. Chenoweth, the Arizona Supreme Court made it clear that all automobile liability contracts were to be read in conformity with A.R.S. § 28–1170. The court held that the insured's failure to notify the insurer of service of process in a damage action growing out of an accident, in violation of a policy provision requiring notice, was excluded as a defense by A.R.S. § 28–1170 subsec. F.

This court has recognized that the Arizona courts construe A.R.S. § 28–1170 as applicable to all Arizona automobile liability policies. State Farm Mutual Automobile Ins. Co. v. Thompson, 9 Cir., 372 F.2d 256, 260–261. In that decision we also ruled that the defense of non-cooperation is unavailable to the insurer under A.R.S. § 28–1170, subsec. F. In Weekes v. Atlantic National Ins. Co., 9 Cir., 370 F.2d 264, 265, 272–273, this court held that a policy provision negating coverage if the driver was intoxi-cated is ineffective in light of the Arizona Financial Responsibility Act.

The defense which the company here wishes to assert—fraud in applying for the policy—is different from those held unavailable in the cases referred to above. However, it is difficult to see how the company could be any more prejudiced by a fraudulent statement in an application than it would be by the insured's lack of cooperation, operation of the vehicle by a drunk driver, or failure to notify the company of the commencement of a damage suit. As indicated above, the latter defenses have been held unavailable in Arizona under § 28–1170 of the Arizona Financial Responsibility Act.

Moreover, the Roses were as blameless for Vassar's fraud as they would have been if he had failed to cooperate with the insurer, had been intoxicated at the time of the accident, or had failed to notify the company of the commencement of the Roses' damage action. In addition, they stand to suffer as much if the company is permitted to prevail on the fraud defense as they would if it were permitted to prevail on any of these other defenses.

These considerations suggest to us that Arizona courts would rule the same with respect to a fraud defense as they, and this court, have ruled concerning these other defenses.

What appears to us as a still more persuasive indication that Arizona courts would so rule arises from the circumstance that the courts of Arizona frequently consult California court decisions in construing the Arizona Financial Responsibility Act. See Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98, at 103. In a recent California case, Barrera v. State Farm Mutual Automobile Ins. Co., Cal.App., 68 Cal.Rptr. 285, it was held that insurance companies cannot avoid an insurance policy because of fraud at its inception. The California court ruled that a statutory provision allowing prospective cancellation of insurance (with notice) evidenced a legislative intent to exclude retrospective

---

1. The policy here in question is not a "certified" policy.

cancellation. Arizona has a similar cancellation statute. A.R.S. § 28–1171.

Moreover, the Arizona Supreme Court's very broad reading of the Arizona Financial Responsibility Act, as manifested by its *Jenkins* and *Sandoval* decisions, shows that the courts of Arizona have chosen to construe that statute in the light of what they regard as Arizona public policy. In *Sandoval*, the Arizona Supreme Court called attention to the emphasis which it had previously placed upon public policy considerations in construing the Arizona Financial Responsibility Act. The court said:

> "The Mayflower case was founded on our holding in Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136, wherein we said:
>
> > 'The Financial Responsibility Act has for its principal purpose the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons.' 93 Ariz. at 280, 380 P.2d at 140.
>
> "In Schecter v. Killingsworth, supra, we further stated that the primary purpose of the Financial Responsibility Act was 'the providing of security against uncompensated damages arising from operation of motor vehicles on our highways.' The foregoing statements were quoted and relied upon in Jenkins v. Mayflower [Insurance Exchange,] supra, and the two cases, when read in conjunction, fully express the public policy of this state in regard to judicial implementa-

tion of the Financial Responsibility Act." (428 P.2d at 100) [2]

The public policy of Arizona as announced by the courts of that state, and the broad construction which those courts have placed upon the Arizona Financial Responsibility Act, convince us that the courts of Arizona would hold that the company's liability to Vassar under the policy in question became absolute upon the occurrence of the accident which injured the Roses, notwithstanding the company's subsequent discovery of fraud by Vassar in applying for the policy.

In so holding we have not overlooked the company's argument that the fact that A.R.S. § 20–1109, making fraudulent representations a defense, was enacted subsequent to A.R.S. § 28–1170, makes it clear that the legislature intended that fraud would be available as a defense despite the provisions of the Financial Responsibility Act.

The premise of this argument is faulty. A.R.S. § 20–1109 was reënacted in amended form in 1959 Ariz.Laws of 1959, Ch. 82, § 5. A.R.S. § 28–1170 was reënacted in amended form two years later. Ariz.Laws of 1961, Ch. 94, § 4. Moreover, the fraud defense provision appears in a general statute applicable to insurance policies of all kinds, and was apparently enacted not to fortify the fraud defense but to limit such a defense to material and serious cases. Before the first enactment of A.R.S. § 20–1109, in 1954, the insurer could void the policy regardless of the type of misrepresentation. We do not believe the courts of Arizona would hold that A.R.S. § 20–1109 contained in the general insurance statutes of that state overrides

2. In the still more recent case of Geyer v. Reserve Insurance Company, 8 Ariz. App. 464, 447 P.2d 556, at 559, the Court of Appeals of Arizona said:
 "Our Supreme Court has made it clear in its *Sandoval, Carpenter* [Carpenter v. Superior Court, etc., 101 Ariz. 565, 422 P.2d 129] and *Jenkins* decisions, supra, that it regards the claims of automobile accident victims to funds created by insurance as interests of the

 highest protectible order. While those opinions have been the subject of criticism, see the dissenting opinions of Mr. Justice Bernstein in *Sandoval* and *Carpenter*, they remain intact as strong expressions of the public policy of our state. They indicate to us that Arizona will be nowhere but in the forefront of jurisdictions in making available to automobile accident victims the fullest benefits of insurance coverage."

the subsequently reënacted provisions of A.R.S. § 28–1170.[3]

We come now to the second basic question presented by this appeal. Since, as we have held, notwithstanding Vassar's alleged fraud, the company's liability to Vassar under the policy became absolute upon the occurrence of the automobile accident, is that liability limited to the $10,000–$20,000 amounts specified in A.R.S. § 28–1170, subsec. B, par. 2(a) and (b), or does it extend to the policy limits of $50,000–$100,000?[4]

If we look only at the express language of the Arizona Financial Responsibility Act, it would appear that the company cannot be held absolutely liable for more than the $10,000–$20,000 amounts specified in section 28–1170, subsec. B, par. 2(a) and (b). A.R.S. § 28–1170, subsec. G provides that a policy which grants the coverage required for a "motor vehicle liability policy" (the designation given certified policies under the Arizona act) may also grant lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy "and the excess or additional coverage shall not be subject to the provisions of this chapter."[5]

Despite this express language, however, the Supreme Court of Arizona, in Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98, refused to limit the insurer's absolute liability to the $5,000–$10,000 limits then specified by the Arizona Financial Responsibility Act. In so ruling, the Arizona court quoted with approval Globe Indemnity Co. v. Universal Underwriters Insurance Co., 201 Cal. App.2d 9, 20 Cal.Rptr. 73, in which, construing a similar statute, the California court held that the insurer was absolutely liable to the full extent of the policy limits.[6] In *Sandoval* the Arizona court expressly ruled: " * * * the second sentence of subsection G is ineffectual to limit coverage to the minimum amount required." (428 P.2d at 104)

Whatever construction we might independently place upon the Arizona statute if we were free to do so is immaterial in this diversity case. Regardless of the language of the statute, we are bound to

---

3. We recognize some ambiguity in A.R.S. § 28–1170 as to the kind of defenses which are precluded by the "absolute liability" concept of section 1170, subsec. F. The second sentence of section 1170, subsec. F, par. 1 suggests that only defenses which arise after the accident are to be useless. However, the first sentence does not qualify the "absolute liability" provision. The trend of Arizona decisions in this area leads us to conclude that the courts of that state would resolve the ambiguity in favor of absolute liability in the case of a fraud defense of the kind presented here.

4. After the company filed this action for a declaratory judgment, the Roses commenced a personal injury action against Vassar and his wife in the Superior Court of Maricopa County, Arizona. This suit went to trial and a judgment was entered in 1966, awarding Mrs. Rose $60,000, Mr. Rose $15,000, and both $1,000. The company thereafter paid Mrs. Rose $10,000 in partial payment and satisfaction of her state judgment. The company paid Mr. Rose $8,250 in partial satisfaction of his state judgment. The company had already paid $1,750 to a third person injured in the accident. The aggregate of the company's payments to the injured persons was therefore $20,000, which accords with the $20,000-for-one-occurrence provision of section 28–1170, subsec. B, par. 2(b).

5. A.R.S. § 28–1170, subsec. F, par. 1, which imposes absolute liability, limits that liability to "the insurance required by this chapter."

6. We similarly construed the *Globe* decision in Truck Insurance Exchange v. American Surety Co. of New York, 9 Cir., 338 F.2d 811. In Weekes v. Atlantic National Insurance Co., 9 Cir., 370 F.2d 264, 273, a diversity case, decided in 1966, this court held that, under the Arizona Financial Responsibility Act, an automobile liability insurance policy excluding coverage if the driver was intoxicated at the time of the accident is ineffective up to the limits of required coverage under that act, but is effective as to amounts above the required coverage. This latter ruling no longer obtains in view of the subsequent decision by the Arizona Supreme Court in *Sandoval*.

give it the meaning which the Supreme Court of Arizona says it has. Insofar as here material, that meaning is that absolute liability extends to the full extent of the policy limits of $50,000–$100,000.

Affirmed.