Argued and submitted April 13,
reversed and remanded September 8, 1981

BURGER,
*Respondent - Cross-Appellant,*
*v.*
NATIONWIDE MUTUAL INSURANCE COMPANY,
*Appellant - Cross-Respondent.*
(No. A7904-01994, CA 17573)
632 P2d 1381

Mildred J. Carmack, Portland, argued the cause for appellant - cross-respondent. With her on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Dennis P. Rawlinson, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action on a policy of automobile insurance issued by defendant to plaintiff for collision damage to his automobile. Defendant refused to pay plaintiff's claim on the ground plaintiff had procured the policy by making material misrepresentations of fact. The trial court entered judgment for plaintiff, holding that because the accident for which the claim was made occurred prior to plaintiff's receipt of notice of cancellation, the defendant's responsibility to pay the claim had become absolute under the provisions of ORS 486.551, a part of Oregon's financial responsibility law, which provides:

> "The liability of an insurance carrier with respect to the insurance policy required by this chapter to prove future responsibility shall become absolute whenever injury or damage covered by the vehicle liability policy occurs. The policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage. No statement made by the insured or on his behalf and in violation of the policy shall defeat or void the policy. The provisions of this section are not applicable to policies of vehicle liability insurance other than those required in connection with proof of future responsibility."

Because collision insurance for damage to an insured's own vehicle is not required by ORS 486.011(7), in connection with proof of financial responsibility to respond in damages to others, *see* ORS 486.566, the trial court's reasoning and judgment were erroneous. Plaintiff does not argue to the contrary on this appeal.

Both parties in their briefs contend, however, that a new trial is unnecessary in that on the merits of the case they were entitled to a judgment as a matter of law. These contentions require an examination of the facts which were agreed upon, admitted by the parties, or found by the trial court based upon substantial evidence.

In August, 1978, plaintiff made telephone inquiries of defendant concerning obtaining insurance coverage from defendant. In response to defendant's inquiries as to whether plaintiff had any accidents or citations within the past 36 months, plaintiff responded that he had "none."

In fact, he knew he had been found guilty of five violations within the 36-month period preceding his application and had been cited for an additional six in January, 1978, all occurring in the state of Arizona. Plaintiff offered no excuse for his failure to disclose the five convictions, but testified as to the six citations that he did not disclose them because he knew they were not yet "on his record" and because, had he disclosed them to defendant, he knew defendant would not issue him insurance.

A few days after the initial telephone conversation, plaintiff again called defendant and provided additional information. Three or four days later, defendant informed plaintiff that his application had been accepted to become effective on September 21, 1978, the date his existing policy would lapse.

Because plaintiff had recently moved from Arizona to Oregon and still had an Arizona driver's license, on September 27, 1978, defendant requested an abstract of plaintiff's Arizona driving record. While the evidence does not disclose when the defendant received the abstract, the abstract when received covered plaintiff's driving record through October 3, 1978. On November 9, the abstract was reviewed by one of defendant's underwriters who, upon discovery of plaintiff's violations, made the decision to void plaintiff's policy. However, on the next day, a premium notice was sent to plaintiff. The premium notice was followed on November 15 by the mailing to plaintiff of a notice of cancellation, specifically stating that the cancellation was based upon plaintiff's material misrepresentations of fact. While notices of cancellation are normally mailed within 24 to 36 hours after a decision to void the policy has been made, here the notice was not mailed until seven days after that decision. Defendant offered no explanation for the delay.

On Saturday, November 18, 1978, plaintiff was involved in the accident giving rise to this claim. He contends he did not receive defendant's notice of cancellation until November 21. He conceded that he had moved from the address given defendant at the time of his application without advising the defendant that he had done so. Plaintiff testified that he customarily went to the old address once or twice a week to pick up his mail.

The trial court on this evidence found that plaintiff made knowing misrepresentations of fact concerning his prior driving record. Defendant provided testimony that, had the truth been known, it would not have issued its policy or, for that matter, accepted plaintiff's application. Plaintiff himself acknowledged that the facts were misrepresented to the defendant because he knew that the policy would not be issued otherwise.

Plaintiff's sole contention on appeal is that the defendant was negligent in discovering the fraud and in issuing its notice of cancellation which resulted in plaintiff being unable to procure substitute insurance prior to the accident. Although the plaintiff's application was received on about August 28, 1978, defendant made no inquiry of the Arizona Department of Motor Vehicles until September 27, 1978, six days after the policy had become effective. It is not clear from the record why inquiries were not made earlier. The record does not disclose precisely when plaintiff's Arizona driving abstract was received by defendant.

The Supreme Court has expressly declined to decide whether an automobile liability insurer must investigate an application for insurance prior to the issuance of a policy. *State Farm Fire v. Sevier,* 272 Or 278, 291-92, 537 P2d 88 (1975), and the dissenting opinions in that case indicate strongly that no such duty exists. 272 Or at 308-09.

■ Even if the defendant was negligent in failing to investigate the plaintiff prior to issuance of its policy, that fact alone would not preclude the defendant's right to rely upon the representations made by the applicant for insurance. In *Kubeck v. Consolidated Underwriters,* 267 Or 548, 554-55, 517 P2d 1039 (1974), the Supreme Court stated:

"An insurer is permitted to avoid compliance with its own insurance policy where the insured has procured the policy by means of fraud. ORS 743.042(1) states:

" '(1) * * * Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless either:

" '(a) Fraudulent; or

" '(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer.'

"One of the basic elements of fraud is reliance. However, the cases make clear that not reliance alone but reliance where there is a right to rely will relieve a contracting party from the fraud of the other. *See Johnson et ux v. Cofer,* 204 Or 142, 281 P2d 981 (1955), for discussion of this rule.

"Under these circumstances, the trier of the facts resolves the conflicting claims of the party who has been fraudulent and the party who has been careless in believing the fraudulent representation. *Melgreen et ux v. McGuire, Inc. et al,* 214 Or 128, 137 [*sic* 327] P2d 1114 (1958); *Horner v. Wagy,* 173 Or 441, 454, 146 P2d 92 (1944). This court has elected to protect the rights of the latter rather than permit the fraudulent party to achieve his purposes by asserting that the representee was guilty of negligence in believing the fraud. *Lilienthal v. Kaufman,* 239 Or 1, 15, 395 P2d 543, 549 (1964); *Outcault Advertising Co. v. Jones,* 119 Or 214, 239 P 1113 (1925); *[Krause v. Eugene Dodge, Inc.,* 265 Or 486, 501, 509 P2d 1199 (1973)]. In *Heverly v. Kirkendall,* 257 Or 232, 237, 478 P2d 381, 383 (1970), this court held that a fraud-feasor will not be heard to assert that his victim was negligent in relying on the misrepresentation. The rationale for this rule was explained by this court in *Johnson et ux v. Cofer, supra* 204 Or at at 150:

" ' * * * The law is not designed to protect the vigilant, or tolerably vigilant, alone, although it rather favors them, but is intended as a protection to even the foolishly credulous, as against the machinations of the designedly wicked. It has also been frequently declared that as between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was guilty of negligence in so doing.' [Citations omitted.]"

Here, the plaintiff's misrepresentations clearly affected the risk assumed by the insurer and were ones which the defendant contended and plaintiff conceded were misrepresentations without which the defendant would not have issued its policy.

Defendant did not act unreasonably in relying upon these representations and was entitled to do so until such time as it became actually aware of plaintiff's misrepresentations. At that time, it became incumbent upon

defendant to act promptly to exercise its election to rescind the contract. *See State Farm Fire v. Sevier, supra,* 272 Or at 290. Plaintiff contends that defendant's mailing the notice of premium one day after its underwriter discovered the fraud was an act affirming of the contract, thus precluding rescission and that the six-day delay in mailing the notice of cancellation was unreasonable. As noted previously, there was no evidence as to when the defendant actually received the abstract of plaintiff's driving record, but it is stipulated that the fraud was actually discovered on November 9. The reason why the premium notice was mailed on Friday, November 10, one day after the decision to cancel was made, was not developed in the record, though it does appear that the decision to cancel may have been made by a different department in the defendant organization without communication between that department and defendant's underwriting department. As stated by the trial court:

> "I suppose, again, it was one of those things where within the office, one party in one department not knowing what the other party, both agents for the defendant company, were doing on the 10th when they — one day later they sent out a premium notice to the defendant — to the plaintiff indicating that there was still a policy in effect and then on the 15th there is testimony that notice of voidance was sent out to the plaintiff and he testifies he did not receive it until the 21st."

In view of the fact that cancellation notices are normally processed within 24 to 36 hours, the intervening weekend of November 11-12, may explain why the notice of cancellation was not mailed until November 15. Plaintiff's failure to advise defendant of his change of address may account for his failure to receive the notice prior to the accident.

In *Sevier,* the insurer, after acquiring knowledge of the insured's misrepresentation, delayed more than one year before attempting to rescind the contract after the insured had become involved in an accident. The court there held that, at least insofar as injured third parties not directly involved in the fraud were concerned, the insurer's delay precluded rescission. Here, after acquiring actual

knowledge of the plaintiff's fraud, defendant acted promptly to rescind. The mailing of notice that a premium was due followed within four days by a notice of cancellation enclosing a refund of plaintiff's premiums do not, when taken together, evidence an intention to affirm the contract. On the contrary, the evidence clearly shows that plaintiff knowingly made false representations as to material facts upon which the plaintiff intended the defendant to rely and upon which the defendant, in fact, did rely in issuing its policy.

After acquiring actual knowledge of the plaintiff's fraud, the defendant acted in a timely manner in rescinding the policy. But for the trial court's erroneous interpretation of plaintiff's rights under the financial responsibility law, defendant would have been entitled to a judgment as a matter of law. It was the duty of the trial court to enter a correct judgment and the parties below were not required to demand a judgment in order to preserve error. Defendant does not specifically assign the trial court's failure to grant such a judgment as error, but in the body of its brief makes that contention. This court may take notice of an error of law appearing on the face of the record. *Tucker v. State Ind. Acc. Com.,* 216 Or 74, 82, 337 P2d 979 (1959). ORAP 7.19. Amended Article VII, section 3, of the Oregon Constitution provides, in part, that if the:

" * * * court shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal * * * ."

Reversed and remanded with directions to enter judgment for defendant.