962 P.2d 213

**The PRUDENTIAL, aka Prudential Property and Casualty Insurance Company, aka Prudential General Insurance Company, Plaintiff/Appellee,**

v.

**The ESTATE OF Leandro ROJO–PACHE-CO, Luis Rojo–Pacheco, Florencio Rojo–Pacheco, Arturo Valdez–Castro, Cameron J. Snider, Francisco Rojo–Montoya, Francisca Montoya De Rojo, Anjelica Yadira Rojo De Pacheco, Carmen Rojo–Montoya, Leonardo Rojo–Montoya and Jose Humberto Rodriguez–Blanco, Defendants/Appellants.**

No. 2 CA–CV 96–0029.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 23, 1997.

Review Denied Sept. 10, 1998.

Risner & Graham by William J. Risner and Kenneth K. Graham, Tucson, for Defendants/Appellants.

Renaud, Cook & Drury, P.A. by William W. Drury, Jr. and Charles A. Struble, Phoenix, for Plaintiff/Appellee.

## OPINION

PELANDER, Presiding Judge.

This declaratory relief action raises issues of first impression in Arizona relating to whether, when, and to what extent an insurer may rescind *ab initio* an automobile insurance policy's liability coverage based on the insured's fraudulent misrepresentations in the application. Defendants/appellants appeal from the trial court's judgment, entered after a jury verdict, in favor of plaintiff/appellee Prudential and from the trial court's denial of appellants' motion for new trial. The trial court ruled on cross-motions for summary judgment before trial that, upon proof of the elements of legal fraud in A.R.S. § 20–1109, Prudential could rescind its policy as to any liability coverage in excess of the minimum amount required by Arizona's Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28–1101 through 28–1262,[1] without complying with the notice of cancellation requirements in A.R.S. § 20–1632. We agree with that legal ruling and therefore affirm. Because only the summary judgment issues warrant a published opinion, we dispose of the numerous other issues appellants raise by a separate memorandum decision. *See Fenn v. Fenn,* 174 Ariz. 84, 847 P.2d 129 (App.1993).

### FACTS AND PROCEDURAL BACKGROUND

On June 3, 1991, Thomas Martin Rogers completed an application for automobile insurance with Prudential. Rogers paid the $193 premium and Prudential issued a binder which provided temporary insurance to Rog-

ers, effective at 12:01 a.m. on that day. The binder was for a single limit of $300,000 in liability coverage [2] and provided:

I hereby declare that all of the foregoing declarations, elections and statements are complete and true to the best of my knowledge and belief. Any Company may rely on them in the issue of any policy from this application....

      *     *     *     *     *     *

[T]he Company hereby binds, effective as of 6/3/91 at 12:01 [A.M.] the COVERAGES and LIMITS OF LIABILITY shown in the application, subject to the declarations, conditions, exclusions and other terms of the policy applied for in the application. The temporary insurance provided by this BINDER will end:

(1) when a policy is issued by the Company applied for;

(2) when a policy is issued by any other Prudential Company replacing the policy applied for;

(3) when the policy is cancelled by the Applicant or the Company; .

(4) at the end of 30 days if the temporary insurance has not been ended as in (1), (2), or (3).

Rogers answered "no" to the following questions on the application: (1) whether any automobile insurance company had cancelled, refused to renew, or declined acceptance within the last three years; (2) whether he had a previous insurer; (3) whether he had been cited or convicted for a moving traffic violation, been required to make a Financial Responsibility filing, or had his driver's license suspended or revoked within the past 60 months; (4) whether he had been involved in an automobile accident while operating any car resulting in damage to any property or bodily injury or death within the past 36 months; and (5) whether he had been in-

---

1. This Act is now called the Vehicle Insurance and Financial Responsibility Act, A.R.S. §§ 28–4001 through 28–4153. We refer to the statutory sections as they existed in 1991, and the portion of the Act relevant to this case is hereafter referred to as the "Financial Responsibility Act" or "the Act."

2. For purposes of this decision, the Prudential policy's liability coverage above the minimum $15,000/$30,000 limits required by § 28–1170(B)(2), up to the policy's $300,000 limit, will be referred to as the "excess coverage."

volved in any losses, claims, or other accidents within the past 36 months. Those representations were false in several respects. In 1988, Rogers was convicted of driving while his license was suspended or revoked, and in 1989 he was cited for failing to give information or render aid in a hit-and-run accident.

On June 19, 1991, Prudential's Scottsdale office received an Equifax [3] report which provided information about Rogers's driving record. An underwriter reviewed the application and report on that date and marked the application "Decline, void, two major violations." Using electronic mail, she notified the agent who had issued the binder to Rogers that she needed to decline coverage because of Rogers's driving record. The agent telephoned Rogers immediately and told him he no longer had insurance with Prudential and his premium would be refunded.[4] The next day, on June 20, Rogers was involved in an automobile collision which killed Leandro Rojo–Pacheco and injured several other appellants.

In a letter dated July 25, 1991, Prudential's underwriting manager notified Rogers:

> This is to more formally notify you that the above captioned insurance is hereby declared null and void as of June 3, 1991, and that, therefore, no such coverage exists or will be deemed to have existed with Prudential. As you know, our agent previously alerted you to this action.
>
> A check in the amount of $193.00 is enclosed as a result of this action, representing the return of all funds tendered in respect of the application for insurance.
>
> This action has been taken by the Company because of what are believed to be material misrepresentations on, and omis-

sions with respect to, your application for the captioned insurance.

\* \* \* \* \* \*

> Had these facts been disclosed when the application was being completed, the captioned application of insurance would not have been taken nor would a binder have been issued; as the foregoing activity clearly would have rendered you ineligible under our underwriting rules.

Prudential filed this declaratory judgment action in July 1992. Its complaint alleged that material misrepresentations in Rogers's application entitled Prudential to rescind his insurance coverage *ab initio* pursuant to A.R.S. § 20–1109, and sought a court ruling that Prudential's only obligation was to pay appellants up to the limits set by Arizona's Financial Responsibility Act pursuant to A.R.S. § 28–1170(B)(2). After extensive discovery, numerous pretrial motions, and the aforementioned partial summary judgment ruling, the case proceeded to trial. The main contested issues were whether Prudential had grounds to rescind the policy under § 20–1109, and whether Prudential had made an initial decision to cancel rather than to void the policy, thereby waiving its right to rescind. After an 18–day trial, the jury returned a general verdict in favor of Prudential and against appellants.

In its judgment entered on the verdict, the trial court ruled that "any coverage afforded under a binder issued to Thomas Martin Rogers by plaintiff is validly rescinded and that Prudential's only duty is to pay to defendants up to the minimum limits set forth in the Arizona Financial Responsibility Act, A.R.S. § 28–1170 B." This appeal followed the trial court's denial of appellants' alternative, combined motions for new trial, for

---

**3.** Equifax is a company which obtains insurance applicants' driving records from various states' motor vehicle departments.

**4.** Rogers claimed in an affidavit that "immediately prior to June 20, 1991," Prudential notified him that "said policy would be suspended but that they would allow a grace period sufficient to allow [him] time to secure alternate coverage. That the premium for said policy would be pro-rated and the unused balance of the premium would then be refunded to [him]." Although

Rogers was not called as a witness at trial, he gave similar testimony in his deposition, which was read to the jury. Thus, evidence regarding what Prudential told or did not tell Rogers before June 20 was presented at trial in connection with appellants' affirmative defenses, argued by the parties, and submitted to the jury, which found in favor of Prudential. This factual conflict, however, is not relevant to the trial court's partial summary judgment for Prudential on the statutory issues.

judgment notwithstanding the verdict, or to amend judgment.

## DISCUSSION

Appellants contend the trial court erred in its partial summary judgment ruling that Prudential could rescind Rogers's liability insurance *ab initio* for any coverage over and above the $15,000/$30,000 minimum limits required by the Act. That ruling did not involve disputed factual issues but rather pure legal questions of statutory interpretation, which we review *de novo*. *Grisham v. Five Star Ins. Co.*, 186 Ariz. 624, 925 P.2d 1075 (App.1996); *Midland Risk Management Co. v. Watford*, 179 Ariz. 168, 876 P.2d 1203 (App.1994).

Appellants present two related arguments. First, they contend § 28–1170(F)(1) of the Financial Responsibility Act and the notice of cancellation requirements in § 20–1632 preclude an insurer from voiding or rescinding an automobile liability policy *ab initio*, at least when claims of innocent third parties are involved. Thus, they assert, § 20–1109 "is inapplicable to automobile liability insurance policies." Second, appellants argue that Prudential's undisputed failure to comply with the notice requirements of § 20–1632, in conjunction with the Act's fundamental purpose and broad policy goals, mandate that Prudential's policy and its $300,000 liability coverage limit were still in full force and effect at the time of the accident. These issues require us to analyze several overlapping statutes and pertinent cases governing automobile liability insurance in Arizona.

### A. Rescission and the Financial Responsibility Act

■ At common law, an insurer had the right to rescind a policy that had been obtained through material misrepresentation. *See, e.g., Illinois Bankers' Life Ass'n v. Theodore*, 44 Ariz. 160, 34 P.2d 423 (1934); *Greber v. Equitable Life Assur. Soc.*, 43 Ariz. 1, 28 P.2d 817 (1934). In 1954, the Arizona Legislature codified that right. Code 1939, Supp.1954 § 61–2309. The current form of that statute, § 20–1109, seems to apply to all forms of insurance and provides as follows:

All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

*See Smith v. Republic Nat'l Life Ins. Co.*, 107 Ariz. 112, 483 P.2d 527 (1971) (statute codifies prior decisional law); *Continental Casualty Co. v. Mulligan*, 10 Ariz.App. 491, 460 P.2d 27 (1969).

In addition to requiring any motor vehicle liability policy issued in this state to provide liability coverage of at least $15,000 per person and $30,000 per accident, § 28–1170(B), the Financial Responsibility Act provides in part:

F. Every motor vehicle liability policy is subject to the following provisions which need not be contained in the policy:

1. The liability of the insurance carrier *with respect to the insurance required by this chapter* shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage, and no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy.

\* \* \* \*

G. A policy which grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of

or in addition to the coverage specified for a motor vehicle liability policy *and the excess or additional coverage shall not be subject to the provisions of this chapter.* With respect to a policy which grants the excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

§ 28–1170(F), (G) (emphasis added).

Relying on *Watford,* appellants contend § 28–1170(F)(1) "prevails over A.R.S. § 20–1109 and precludes an insurer from voiding an automobile policy based upon the insured's fraudulent misrepresentation," and from "void[ing] a policy after the harm has occurred even for those amounts above the minimum mandatory limits." In *Watford,* the insurer sought to avoid liability to injured third parties because the insured had lied on her application by misrepresenting her marital status. While her husband was driving the insured car, he caused an accident which injured the third parties. The carrier denied coverage based on § 20–1109 because of the insured's fraud. In affirming summary judgment for the third parties, this court concluded that "the general provisions of § 20–1109 do not override the more specific provisions of § 28–1170(F)(1)" relating to auto insurance policies, and that once the third parties "were injured in the accident, § 28–1170(F)(1) superseded § 20–1109." 179 Ariz. at 171, 876 P.2d at 1206. Accordingly, we held that the insurer's liability to the third parties "became absolute upon the occurrence of the accident." *Id.* at 172, 876 P.2d at 1207.

Presumably based on *Watford,* Prudential concedes (as it did in the trial court) that it could not rescind its policy up to the minimum coverage limits mandated by § 28–1170(B)(2). Prudential maintains, however, that Rogers's material misrepresentations and § 20–1109 entitled it to rescind *ab initio* the policy's excess coverage. *Watford,* which dealt only with the insurer's attempt to avoid paying· on its minimum limits policy,[5] did not address or resolve the specific issues posed in this case.[6]

The Financial Responsibility Act's "fundamental purpose" is to provide " 'security against uncompensated damages arising from operation of motor vehicles on our highways.' " *Chase v. State Farm Mut. Auto. Ins. Co.,* 131 Ariz. 461, 464, 641 P.2d 1305, 1308 (App.1982), *quoting Schecter v. Killingsworth,* 93 Ariz. 273, 285, 380 P.2d 136, 144 (1963). *See also Watford,* 179 Ariz. at 173, 876 P.2d at 1208 (the Act "must be liberally construed to foster its main objective of making available to automobile accident victims the fullest benefits of insurance coverage"); *Geyer v. Reserve Ins. Co.,* 8 Ariz. App. 464, 447 P.2d 556 (1968). Despite the Act's broad policy goals, § 28–1170 does not support appellants' position.

An auto insurance carrier's liability "become[s] absolute when injury or damage covered by the motor vehicle liability policy occurs." § 28–1170(F)(1). That liability, however, is specifically limited only "to the insurance required by this chapter," *id.,* that is, the minimum $15,000/$30,000 limits required by § 28–1170(B)(2). Similarly, although § 28–1170(F)(1) provides that "no statement made by the insured or on his

---

**5.** Although this court's opinion in *Watford* does not indicate what the policy's liability coverage limits were, we take judicial notice of the record on appeal in that case, which confirms that the policy at issue there had minimum limits of $15,000/$30,000. *Cf. Visco v. Universal Refuse Removal Co.,* 11 Ariz.App. 73, 462 P.2d 90 (1969).

**6.** In view of the evidence, which the jury apparently accepted, that Prudential specifically informed Rogers before the accident that he no longer had insurance with Prudential, this case is factually distinguishable from *Watford.* We do not decide whether, under these circumstances, Prudential was obligated to pay the $15,000/$30,000 minimum limits, as it has conceded and as

the trial court ruled. We note, however, that this case does not involve a situation in which the insured who made the misrepresentation seeks to recover under the policy. Such a case raises different considerations, which we do not address. *See, e.g., Ferrell v. Columbia Mut. Cas. Ins. Co.,* 306 Ark. 533, 816 S.W.2d 593 (1991); *Continental Western Ins. Co. v. Clay,* 248 Kan. 889, 811 P.2d 1202 (1991); *Dunn v. Safeco Ins. Co.,* 14 Kan.App.2d 732, 798 P.2d 955 (1990); *United Sec. Ins. Co. v. Comm'n of Insurance,* 133 Mich.App. 38, 348 N.W.2d 34 (1984); *Burger v. Nationwide Mut. Ins. Co.,* 53 Or.App. 898, 632 P.2d 1381 (1981).

behalf and no violation of the policy shall defeat or void the policy," subsection (G) states any "excess or additional coverage [above that specified and required for a motor vehicle liability policy] shall not be subject to the provisions of this chapter." That language clearly limits the Act's requirements and effect to the statutorily-required minimum coverage. Thus, this court's holding in *Watford*, which involved a minimum limits policy, applies only to the minimum coverage limits mandated by the Act. Neither *Watford* nor § 28–1170 preclude rescission *ab initio* under § 20–1109 of auto liability coverage in excess of the minimum limits.

Appellants maintain, however, that *Farmers Ins. Exch. v. Rose*, 411 F.2d 270 (9th Cir.1969), compels a contrary conclusion. In that case, an insurer contended its policy with liability limits of $50,000/$100,000 was void because of the insured's misrepresentations, and therefore it was not obligated to pay any part of a judgment obtained by injured third parties against the insured. Applying Arizona law, the Ninth Circuit Court of Appeals held (1) the insurer's liability became absolute at the time of the accident, regardless of the defense of fraud in procurement of the policy, and (2) the carrier's liability was not limited to the minimum statutory amounts, but rather extended to the full policy limits. On the latter point, the court acknowledged that the "express language" of § 28–1170(G) appeared to suggest otherwise, *id.* at 274, but felt "bound to give it the meaning which the Supreme Court of Arizona [said] it has" in *Sandoval v. Chenoweth*, 102 Ariz. 241, 428 P.2d 98 (1967). *Rose*, 411 F.2d at 274–75.

In *Sandoval*, the insurer attempted to avoid coverage of a third party's claim on the ground that the insured had failed to notify it that he had been sued, as the policy required. Our supreme court held that § 28–1170(F)

controlled and that the carrier was responsible for the full policy limits. Relying on California decisions, the court concluded that "the second sentence of subsection G is ineffectual to limit coverage to the minimum amount required." *Sandoval*, 102 Ariz. at 247, 428 P.2d at 104.

Nine years later, however, our supreme court disapproved of that language, characterizing it as "pure dictum." *Arceneaux v. State Farm*, 113 Ariz. 216, 218, 550 P.2d 87, 89 (1976). In concluding that an auto liability policy's household exclusion was invalid only to the extent it conflicted with the Act, the court held that "the plain import of the words in that statute [§ 28–1170] indicates that coverage, in addition to the amount mandated by the ... Act, shall not be subject to the provisions of the Act." [7] *Id.* In our view, *Arceneaux* also casts doubt on the second prong of the Ninth Circuit's holding in *Rose*. Similarly, although this court in *Watford* discussed and found "persuasive" the first prong of the Ninth Circuit's holding in *Rose*, 179 Ariz. at 173, 876 P.2d at 1208, we *did not address or adopt the second prong of that holding.*[8]

Appellants' reliance on *Transportation Ins. Co. v. Bruining*, 186 Ariz. 224, 921 P.2d 24 (1996), is misplaced. In that case, the insured and insurer had expressly agreed in writing to a named driver exclusion for a particular employee of the insured, but that exclusion had expired when the employee later caused an accident in which a third party was injured. The carrier contended it was only responsible for the minimum coverage required by the Act, relying on *Arceneaux* and § 28–1170(G). The supreme court disagreed, finding "the *Arceneaux* rationale inapplicable" because the carrier in *Bruining* failed to comply with the statutorily-required

7. The court's subsequent holding in *Averett v. Farmers Ins. Co. of Arizona*, 177 Ariz. 531, 869 P.2d 505 (1994), that a household exclusion may be entirely unenforceable if it is contrary to the policyholder's reasonable expectations, does not affect *Arceneaux*'s holding regarding subsection (G) or its criticism of *Sandoval*.

8. Appellants' supplemental citation to *Ogden v. United States Fidelity and Guaranty Co.*, 188 Ariz.

132, 933 P.2d 1200 (App.1996), is unavailing. Although the court cited *Rose* and noted that § 28–1170(F)(1) "is typically used to mandate coverage after an injury or damage occurs that is covered by the policy, but in circumstances where the policy was obtained by fraudulent representations," *id.* at 139, 933 P.2d at 1207, the court did not address or embrace the second prong of the *Rose* holding.

method for excluding named drivers. *Id.* at 228, 921 P.2d at 28.

The court in *Bruining* distinguished *Arceneaux* as a case in which an exclusion was valid and effective except to the extent that it conflicted with the Act's requirement of minimum liability insurance coverage. In contrast, the policy in *Bruining* contained no valid exclusion in effect at the time of the accident. According to appellants, *Bruining* controls here because there was no "contractual provision allowing for rescission," and "[t]he only contract ever in effect," the binder, was to "remain in effect for 30 days, until a policy is issued or until *canceled,* whichever is first."

■ Appellants' argument overlooks several points. First, the binder, by its own terms, was "subject to the declarations, conditions, exclusions and other terms of the policy applied for in the application." Second, under Arizona law, binders "shall be deemed to include all the usual terms of the policy as to which the binder was given ..., except as superseded by the clear and express terms of the binder." § 20–1120(A). *See Turner v. Worth Ins. Co.,* 106 Ariz. 132, 472 P.2d 1 (1970). Third, Prudential's policy provided that any language relating to cancellation did not waive the company's right to void the policy and, like the binder itself, indicated the insured agreed that statements on the application "are true and correct," and Prudential would rely "on the accuracy of these statements" in issuing the policy. For these reasons and because a specific statute, § 20–1109, prevents recovery under a policy if a carrier proves the elements set forth in the statute, we believe this case is more like *Arceneaux* than *Bruining.*

■ "Courts construe seemingly conflicting statutes in harmony when possible." *Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988). Unlike the situation in *Watford,* §§ 20–1109 and 28–1170(F)(1) do not directly conflict in determining a carrier's right to rescind auto liability insurance coverage amounts over and above the minimum limits prescribed by the Act. The Act only guarantees the minimum coverage under § 28–1170(B) and does not require more. Nothing in the Act evinces an express or implied intent to preempt application of § 20–1109 to excess liability coverage in auto insurance policies. In addition, appellants have not cited, nor have we found, any legislative history indicating such an intent.

■ Under *Arceneaux* and § 28–1170(G), we conclude § 20–1109 provides a valid ground for rescinding auto liability insurance coverage *ab initio,* except to the extent it conflicts with the Act. Thus, the trial court did not err in ruling that § 20–1109 "is applicable to the facts of this case, and that [Prudential] would be entitled to rescission [as to the excess coverage] upon proof by admissible evidence of each of the requirements of [that statute]." [9]

---

9. Several cases from other jurisdictions support this conclusion. *See, e.g., Federal Kemper Ins. Co. v. Brown,* 674 N.E.2d 1030, 1036 (Ind.App. 1997) ("[B]ecause Indiana's Financial Responsibility Act assures that no more than the statutory minimum coverage be available to compensate accident victims, a defrauded insurance company liable to innocent third parties ... should be entitled to partially rescind its liability coverage to the minimum amounts required under the Act."); *Farmers Ins. Exch. v. Anderson,* 206 Mich.App. 214, 520 N.W.2d 686 (1994); *Odum v. Nationwide Mut. Ins. Co.,* 101 N.C.App. 627, 401 S.E.2d 87, 92 (1991) (based on a statute identical to A.R.S. § 28–1170(G), stating "as to any coverage in excess of the statutory minimum, the insurer is not precluded by statute or public policy from asserting the defense of fraud"); *Dairyland Ins. Corp. v. Smith,* 646 P.2d 737, 739 (Utah 1982) (statute similar to § 28–1170(F) "precludes rescission of the policy after the oc- currence of the accident involving the [third party] to the extent of the minimum coverages required"). *Cf. Ferrell v. Columbia Mut. Cas. Ins. Co.,* 306 Ark. 533, 816 S.W.2d 593, 596 (1991) ("Courts may sever compulsory provisions of an insurance policy from non-compulsory provisions and permit rescission only as to non-compulsory provisions."). We acknowledge there is authority to the contrary. *See, e.g., Georgia Farm Bureau Mut. Ins. Co. v. Phillips,* 251 Ga. 244, 304 S.E.2d 725 (1983); *Van Horn v. Atlantic Mut. Ins. Co.,* 334 Md. 669, 641 A.2d 195 (1994). Neither *Phillips* nor *Van Horn,* however, addressed any provisions similar to A.R.S. § 28–1170(G), and the court in *Van Horn* noted that the Maryland statute preserving insurers' common law right of rescission for fraud or misrepresentation had been expressly repealed by the state's new insurance law, which did not reenact a provision preserving a right of rescission.

## B. Cancellation Statutes

■ Appellants next contend § 20–1632 provides the exclusive mechanism for cancelling an auto liability insurance policy and implicitly abrogates an insurer's right to retroactively rescind such a policy under § 20–1109. Conversely, Prudential asserts that § 20–1632 does not limit "an insurer's ability to rescind the policy[,] at least prior to the policy being in effect for 60 days."

The legislature enacted §§ 20–1631 and 20–1632 in 1971, establishing notice procedures and other requirements for cancellation and nonrenewal of automobile insurance policies. Section 20–1631 provides in pertinent part: [10]

\* \* \* \*

**B.** No insurance company shall ... issue a motor vehicle insurance policy in this state unless the cancellation and renewal conditions of such policy or the endorsement on such policy includes the following limitations pertaining to cancellation and renewal by such company. After this policy has been in effect for sixty days, or if the policy is a renewal, effective immediately, the company shall not exercise its right to cancel or fail to renew the insurance afforded under (insert coverages) unless:

\* \* \*

2. The insurance was obtained through fraudulent misrepresentation.

. \* \* \* \*

**D.** The provisions of this section do not apply to any policy which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer [with specified exceptions not applicable here].

Section 20–1632 sets forth notice requirements that an insurer must meet before cancelling or refusing to renew a policy, and provides that failure to comply with those requirements "shall invalidate any cancellation, non-renewal or reduction in limits of liability or coverage, except a cancellation or non-renewal for nonpayment of premium." The statute requires, *inter alia,* an insurer to mail notice of a policy's cancellation to the insured at least ten days before the cancellation's effective date and specifies what the notice must include. Prudential admittedly did not comply with those cancellation requirements, but contends it did not have to because it chose to rescind, rather than cancel, Rogers's policy.

As noted above, § 20–1631(B)(2) (now § 20–1631(D)(2)) permits a carrier to cancel an auto insurance policy if "[t]he insurance was obtained through fraudulent misrepresentation." The pivotal issue here is whether and when a carrier may rescind an auto insurance policy under § 20–1109 without having to comply with § 20–1632. No Arizona cases have addressed or resolved this issue.[11]

In *Grisham v. Five Star Ins. Co.,* 186 Ariz. 624, 925 P.2d 1075 (App.1996), cited by appellants, Division One of this court held that the carrier failed to comply with the requirements of § 20–1632(A) by trying to cancel the insured's policy without including a refund of unearned premium with the notice of cancellation, thereby invalidating the attempted cancellation. § 20–1632(B). Although the carrier in *Grisham* had issued the policy less than 60 days before it sent a

---

10. We refer to §§ 20–1631 and 20–1632 as they read in 1991, when Prudential issued its binder and the accident occurred. Subsequent amendments have altered some of the wording and numbering of these statutes and their subsections.

11. Contrary to appellants' contention, the Ninth Circuit in *Rose* did not rely on or even address § 20–1632, which was enacted two years after that decision. The court in *Rose* did cite *Barrera v. State Farm Mut. Auto. Ins. Co.,* 68 Cal.Rptr. 285 (App.1968), and, by analogy, A.R.S. § 28–

1171, for the proposition that "a statutory provision allowing prospective cancellation of insurance (with notice) evidenced a legislative intent to exclude retrospective cancellation." *Rose,* 411 F.2d at 272–73. *Barrera,* however, was later vacated, *Barrera v. State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969), and § 28–1171 (entitled "Notice of Cancellation or Termination of Certified Policy") is part of Arizona's Financial Responsibility Act, and thus only applies to the Act's mandatory minimum limits. § 28–1170(G); *Arceneaux.*

notice of cancellation, the carrier did not raise as an issue, nor did the court address, whether § 20–1632 applies to such policies. Rather, the carrier admittedly had attempted to cancel the policy and only argued that it had complied with the statutory requirements by sending the insured a premium refund check after the cancellation notice but before the accident.[12] Moreover, unlike this case, *Grisham* did not involve issues of legal fraud and rescission under § 20–1109.

Both sides cite numerous cases from other states purportedly supporting their respective positions.[13] Extensive analysis or discussion of those cases, however, is unnecessary. Section 20–1631 prescribes limited, enumerated reasons for which an insurer may cancel or not renew an auto insurance policy, but those restrictions apply only to policies that have been in effect for sixty days or more. §§ 20–1631(B), (D). Although § 20–1632 is not expressly so limited,[14] it requires a notice of cancellation to include "[a] statement in writing of the specific facts which constitute the reasons, *consistent with § 20–1631*, for such action by the insurer." § 20–1632(A)(1) (emphasis added). Appellants, relying on *Grisham*, contend the notice requirements of § 20–1632 independently apply to all auto insurance policies from the moment of their inception, even

though the limitations in § 20–1631 apply only to policies which are at least 60 days old.

In *State Compensation Fund v. Mar Pac Helicopter Corp.*, 156 Ariz. 348, 752 P.2d 1 (App.1987), Division One of this court rejected an argument similar to appellants', albeit in a different context. An employer contended that its workers' compensation carrier could not rescind its policy based on legal fraud under § 20–1109 because a cancellation statute, former § 23–961(D) (now § 23–961(E)), "excludes every other mechanism for denying insurance coverage." *Id.* at 354, 752 P.2d at 7. Rejecting that argument, the court stated: " 'Provisions of a statute relating to cancellation do not bear upon rescission, nor upon the right to defend on the basis of misrepresentation.' " *Id.* at 355, 752 P.2d at 8, *quoting* 12A J. Appleman, *Insurance Law and Practice* § 7255 at 289–90 (1981).

■ "Statutory provisions are to be read in the context of related provisions and of the overall statutory scheme. The goal is to achieve consistency among the related statutes." *Goulder v. Arizona Dept. of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993). *See also Grant v. Board of Regents*, 133 Ariz. 527, 652 P.2d 1374 (1982); *State v. Wilhite*, 160 Ariz. 228, 772 P.2d 582 (App.1989). Enactments which deal with the same class of things and

**12.** The carrier sent the premium refund check to the insured more than 60 days after issuing the policy and several weeks after the effective cancellation date provided for in the notice of cancellation. In addition, the insured never received or cashed the premium refund check.

**13.** *Compare Munroe v. Great American Ins. Co.*, 234 Conn. 182, 661 A.2d 581, 585 (1995) ("the inclusion of a cancellation provision specifically addressing material misrepresentation indicates that the legislature intended [that statute] to be an insurer's exclusive remedy for misrepresentations" and abrogated insurers' *common law* right to rescind a policy as to injured third party); *Georgia Farm Bureau Mut. Ins. Co. v. Phillips*, 251 Ga. 244, 304 S.E.2d 725 (1983); *Sentry Indem. Co. v. Sharif*, 248 Ga. 395, 282 S.E.2d 907 (1981); *National Ins. Association v. Peach*, 926 S.W.2d 859, 862 (Ky.App.1996) ("the only remedy for an insurer is a prospective cancellation of the policy in accordance with the statutory scheme regulating motor vehicle insurance"); *Van Horn v. Atlantic Mut. Ins. Co.*, 334 Md. 669, 641 A.2d 195 (1994), *with Cunningham v. Citizens Ins. Co.*, 133 Mich.App. 471, 350 N.W.2d

283, 286 (1984) (cancellation statutes do not preclude rescission based on fraud, noting "an important difference between rescission and cancellation"); *United Sec. Ins. Co. v. Commissioner of Insurance*, 133 Mich.App. 38, 348 N.W.2d 34 (1984); *Glockel v. State Farm Mut. Auto. Ins. Co.*, 224 Neb. 598, 400 N.W.2d 250 (1987) (enactment of statute prescribing conditions for cancelling auto liability insurance did not indicate intent to abrogate common law and statutory right to rescission in case of fraud or misrepresentation); *Government Employees Ins. Co. v. Chavis*, 254 S.C. 507, 176 S.E.2d 131 (1970). *Cf. Clay* (cancellation statute applies only to cancellation, not rescission, of auto liability insurance policies).

**14.** We note that current § 20–1631(G), as amended in 1997, states: "The provisions of this *article* do not apply to any policy which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer. . . ." (Emphasis added.)

have a common purpose are *in pari materia* and must be read and construed together in order to give full effect to each statute, if possible. *Arizona Gunite Builders v. Continental Cas. Co.,* 105 Ariz. 99, 459 P.2d 724 (1969).

Sections 20–1631 and 20–1632, together with several other statutes, were enacted in 1971 and relate to all aspects of cancellation and nonrenewal of automobile insurance policies. Those cancellation statutes were enacted seventeen years after § 20–1109 was enacted, and well after Arizona's Financial Responsibility Act became law. We presume that when the legislature enacts a statute, it is aware of existing statutes, *Daou v. Harris,* 139 Ariz. 353, 678 P.2d 934 (1984), and "[w]here a later statute does not expressly repeal a former one, they should be construed so as to give effect to each, if possible." *State v. Cassius,* 110 Ariz. 485, 487, 520 P.2d 1109, 1111 (1974). *See also National Union Fire Ins. Co. v. Truck Ins. Exch.,* 107 Ariz. 291, 294, 486 P.2d 773, 776 (1971) ("[R]epeals by implication are not favored and will not be indulged in if there is any other reasonable construction."). The cancellation statutes do not refer to § 20–1109, and do not explicitly repeal it or preclude its application to auto insurance policies.[15]

Reading the statutes together in an effort to reconcile and harmonize them, we believe it is clear that the legislature intended the restrictions on grounds for cancellation set forth in § 20–1631 and the notice provisions in § 20–1632 to apply only to policies which have been in effect for 60 days or more. To hold otherwise would not give full effect to the language of § 20–1631, and would render superfluous the requirement in § 20–1632 that a cancellation notice set forth reasons consistent with § 20–1631. Because Rogers's policy had been in effect for less than 60 days at the time Prudential rescinded it and at the time of the accident, we hold Prudential was not required to comply with the notice requirements of § 20–1632 and was entitled to rescind the policy's excess coverage *ab initio* if it established the prerequisites for doing so under § 20–1109, which the jury apparently found.[16] *See Erie Ins. Exch. v. Lake,* 543 Pa. 363, 671 A.2d 681, 686 (1996) ("remedial constraints of [cancellation statute] do not come into play until 60 days after the issuance of an insurance policy," and carrier has "a window" within which it may investigate necessary risks and, if proper grounds exist, rescind policy).

We are mindful of and sympathetic to the plight of innocent third parties such as appellants, who played no part in Rogers's misrepresentations.[17] Conversely, however, prohibiting rescission of a policy's excess coverage in a case like this could lead insurers to not issue binders and to delay extending auto liability insurance until an applicant has been

**15.** We note that six years after adoption of §§ 20–1631 and 20–1632, this court recognized that an insurer could rescind an auto insurance policy under § 20–1109 if it were obtained by fraudulent misrepresentations. *Keplinger v. Mid–Century Ins. Co.,* 115 Ariz. 387, 565 P.2d 893 (App.1977). We held in that case, however, that the insurer had failed to sustain its burden of proof on the misrepresentation claim.

**16.** We need not address whether the cancellation requirements and notice procedures in §§ 20–1631 and 20–1632 totally supersede any rescission rights under § 20–1109 for auto liability insurance policies which have been in effect for 60 days or longer. *See* A.R.S. § 20–113; *Erie Ins. Exch. v. Lake,* 543 Pa. 363, 671 A.2d 681 (1996) (carrier may rescind policy as to injured third parties during first 60 days but thereafter may only utilize prospective statutory cancellation remedies).

**17.** A number of courts have differentiated first party claims from third party claims in determin-

ing whether an insurer may rescind an auto insurance policy based on the insured's misrepresentations. *See, e.g., Douglass v. Nationwide Mut. Ins. Co.,* 323 Ark. 105, 913 S.W.2d 277 (1996); *Munroe; Clay; Peach; Van Horn; United Sec. Ins. Co.* The overriding concern of those courts, however, appears to have been leaving injured third parties without any recovery whatsoever and not allowing carriers to avoid providing any coverage under the particular state's compulsory insurance laws. *See Pekin Ins. Co. v. Super,* 912 F.Supp. 409 (S.D.Ind.1995) (insurer may assert insured's misrepresentation so as to avoid coverage in excess of statutorily required liability limits for injured third party claim); *Federal Kemper Ins. Co.* (same); *Farmers Ins. Exch.,* 520 N.W.2d at 688 ("even though an innocent third party was injured, [the carrier's] liability should be limited to the statutory minimum, because the policy was fraudulently obtained"); *Odum.*

fully investigated and approved for coverage. That, in turn, could result in more temporarily uninsured motorists on the roads. *Cf. Cunningham v. Citizens Ins. Co.,* 133 Mich. App. 471, 350 N.W.2d 283, 285–86 (1984) ("We do not believe that those who obey the law and are honest in their dealings should be forced to suffer adverse consequences because of a few wrongdoers' fraudulent acts."). We base our holding on our reading of the pertinent statutes. In our view, it is for the legislature, not this court, to evaluate and balance competing policy considerations that bear on these issues and to make any necessary changes in this area of insurance law.[18]

### DISPOSITION

We affirm the trial court's judgment.

ESPINOSA and HOWARD, JJ., concur.

---

18. We note that at least one state, by statute, expressly prohibits insurers from rescinding an auto policy's liability coverage for fraud or misrepresentation with respect to any injury to third parties. *See* Ark. Code Ann. § 23–89–303(e)(1) (Supp.1993).